**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**CHERRY, BEKAERT & HOLLAND, a general partnership, et al., Defendants.**

No. 88–1147–CIV–T–15C.

United States District Court, M.D. Florida, Tampa Division.

Nov. 28, 1989.

Alison Berman, Federal Deposit Ins. Corp., Washington, D.C., and Leonard H. Gilbert, Robert Pass, Chris S. Coutroulis, Mary Stenson Scriven, Carlton, Fields, Ward, Emmanuel, Tampa, Fla., for plaintiff.

Michael Minkin, Hermelee Cowart & Minkin, Miami, Fla., for defendants.

## ORDER

ELIZABETH A. JENKINS, United States Magistrate.

THIS CAUSE comes on for consideration of defendant Cherry, Bekaert & Holland's ("Cherry Bekaert") Motion to Compel Production of Documents (Dkt.102) ("first motion to compel") and defendant's Second Motion to Compel Production of Documents (Dkt.117) ("second motion to compel") fol-

lowing the second discovery conference held before the undersigned on September 13, 1989 at which the undersigned heard arguments concerning defendants' motions and took the matters under advisement.

Plaintiff brings this suit in its corporate capacity for accounting malpractice against defendants pursuant to this court's jurisdiction under 12 U.S.C. § 1819. Defendant, Cherry Bekaert, is a partnership of certified public accountants with offices throughout the Southeastern United States. Cherry Bekaert was engaged by Park Bank and Florida Park Banks, Inc. to provide independent auditing and other professional services. Plaintiff's suit seeks money damages against Cherry Bekaert for losses allegedly arising from Cherry Bekaert's breach of its common law and contractual duties as the independent auditor of Park Bank in the audit year ending December 31, 1983.

Park Bank was a state-chartered bank organized under the laws of the State of Florida. On February 14, 1986, the Comptroller of the State of Florida assumed exclusive custody and control of Park Bank's assets and affairs and, subsequently, tendered the appointment of receiver of the bank to the Federal Deposit Insurance Corporation which accepted such role under 12 U.S.C. § 1821(e).

### I. First Motion To Compel Attorney–Client Privilege Issue

#### A. Introduction

On February 14, 1986, the FDIC, acting as receiver (hereafter "FDIC–Receiver"), took over Park Bank. The FDIC–Receiver then sold certain assets to FDIC acting in its corporate capacity (hereafter "FDIC–Corporate") as part of a purchase and assumption transaction. *See Gunter v. Hutcheson,* 674 F.2d 862, 870 (11th Cir.), *cert. denied* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (explaining purchase and assumption process).[1] Included among

---

1. Under 12 U.S.C. § 1823(e), the FDIC is authorized to make loans or purchase assets whenever in the judgment of its board of directors such action will reduce risk or avert certain loss to the FDIC and will facilitate merger or consolidation of one insured bank with another or will

facilitate the sale of assets of an open or closed insured bank to and assumption of its liability by another insured bank. As part of the purchase and assumption transaction undertaken by the FDIC–Receiver with regard to Park Bank, FDIC–Corporate purchased all claims and ac-

those assets are the loans underlying plaintiff's damage claims in this action. Transferred along with the assets sold were certain related documents some of which plaintiff contends contain confidential communications between Park Bank and its attorneys.

With defendant's first motion to compel, it seeks to compel the production of the documents which plaintiff contends reflect communications between Park Bank and the bank's counsel relating to delinquent loans, compliance with regulatory standards and workout proposals. Defendant claims these documents are relevant and discoverable to show why the loans were made, towards the issue of contributory negligence, towards damages and mitigation.

A threshhold issue arises as to the applicable law with regard to the FDIC's assertion of the attorney-client privilege of Park Bank. Under Rule 501, Fed.R.Evid., state law on privilege governs with respect to claims or defenses with regard to which state law supplies the rule of decision. To the extent that plaintiff's claims are premised on accountant malpractice for which Florida law should govern, therefore, Florida law of privilege should also apply.

However, it has been held that the rights and liabilities of the FDIC, acting in its corporate capacity in a purchase and assumption transaction as here, are governed by federal common law. *See Trigo v. Federal Deposit Insurance Corp.*, 847 F.2d 1499, 1502 (11th Cir.1988). It is unclear, however, whether this decision would apply to FDIC–Corporate's assertion of evidentiary privileges. Accordingly, to the extent necessary, the undersigned will address both federal common law and Florida law with regard to FDIC–Corporate's ability to assert the attorney-client privilege here. *See Federal Deposit Insurance Co. v. McAtee*, 124 F.R.D. 662, 664 (D.Kan.1988).

### B. Applicability of the Privilege

■ The FDIC in its corporate capacity asserts the attorney-client privilege of Park Bank with regard to the documents in question. FDIC–Corporate contends that it has the right to assert the privilege of the failed bank under both Florida and federal common law by virtue of acquiring certain assets by assignment from the FDIC–Receiver.

As the parties recognize, there is a split of authority in the lower federal courts concerning FDIC–Corporate's right to assert the attorney-client privilege of a failed bank by virtue of its purchase of certain assets of the bank from FDIC–Receiver. *Compare Federal Deposit Ins. Corp. v. Ellis*, Civ. No. CV84–PT–2560–M, slip op. at 4 (N.D.Ala. Dec. 19, 1985); *and Federal Deposit Ins. Corp. v. Berry*, Civ. No. 1–85–62, slip op. (E.D. Tenn. June 3, 1985)[2], later op. 659 F.Supp. 1475 (E.D.Tenn.1987) (both allowing assertion of the privilege) *with Federal Deposit Ins. Corp. v. Amundson*, 682 F.Supp. 981, 986–987 (D.Minn.1988) and *Federal Deposit Ins. Corp. v. McAtee*, 124 F.R.D. 662, 663–664 (D.Kan.1988) (both disallowing assertion of the privilege).

*Ellis* and *Berry*, citing *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)[3], held that the FDIC–Corporate could assert the attorney-client privilege of the closed bank following a purchase and assumption transaction. *Ellis*, slip op. at 2; *Berry*, slip op. at 7. These two courts held that pursuant to the purchase and assumption process the FDIC–Corporate should stand in the shoes of the FDIC–Receiver for purposes of asserting the privilege. *Ibid.* The *Ellis* court stated that any other result would hinder FDIC–Corporate in its performance of its statutory obligations which included the "orderly

---

tions of Park Bank, known or unknown against any entities, including Park Bank's accountants.

**2.** Copies of the *Berry* and *Ellis* slip opinions are attached to plaintiff's response brief to defendants' first motion to compel (Dkt. 124).

**3.** *Weintraub* held that the trustee of a corporation in bankruptcy had the power, while attempting to liquidate assets for the benefit of shareholders and creditors, to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications. 471 U.S. at 355–358, 105 S.Ct. at 1994–1996.

winding up of the affairs of a bank." *Ellis,* slip op. at 3.

*Amundson* and *McAtee,* citing both state and federal law with regard to assertion of the privilege, held that the transfer of assets of a failed bank from FDIC–Receiver to FDIC–Corporate did not transfer the attorney-client privilege. Both courts expressly disagreed with the holdings in *Ellis* and *Berry,* and criticized reliance on *Weintraub* which they held distinguishable as involving the maintenance of the pre-existing entity in bankruptcy through its winding-down rather than the liquidation of a defunct entity by the FDIC. *McAtee,* 124 F.R.D. at 664 and *Amundson,* 682 F.Supp. at 987.

### C. Applicability of FIRREA

Plaintiff also contends that the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, §§ 101 *et seq.* (1989), amending *inter alia* the FDIC Act, 12 U.S.C. §§ 1811 *et seq.,* clarifies FDIC–Corporate's right to assert the attorney-client privilege of Park Bank. FIRREA became law in August, 1989 and sets forth significant reforms in the banking and savings and loan industry.

The provision of FIRREA which plaintiff argues clarifies its right to assert the privilege is § 217(4) which amends section 13 of the FDIC Act, 12 U.S.C. § 1811 *et seq.,* by adding a new § 1823(d)(3) setting forth the powers and privileges that FDIC–Corporate has when it engages in a purchase and assumption transaction. The section provides, in pertinent part, as follows:

(A) In General.—With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under Sections 11 and 15(b).

(B) Rule of Construction.—Such rights, powers, privileges, and authorities shall be in addition to and not in derogation of any rights, powers, privileges and authorities otherwise applicable to the Corporation.

FIRREA also amends § 11 of the FDIC Act to add a new § 1821(d)(2)(A)(i) which provides:

The Corporation shall as conservator or receiver, and by operation of law, succeed to (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, account holder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution....

In addition, § 212 of FIRREA also amends § 11 of the FDIC Act and adds *inter alia* a new subsection 1821(c)(3)(B) which provides:

(B) Additional Powers—In addition to the powers conferred and the duties related to the exercise of such powers imposed by State law on any conservator or receiver appointed under the law of such State for an insured State depository institution, the Corporation, as conservator or receiver pursuant to an appointment described in subparagraph (A), shall have the powers conferred and the duties imposed by this section on the Corporation as conservator or receiver.

These provisions cited above clearly support plaintiff's position that FDIC–Corporate is entitled to assert the "rights, titles, powers, and privileges" of FDIC–Receiver, including the attorney-client privilege.[4]

---

**4.** Defendants assert that the "rights, powers, privileges, and authorities" language in the new § 1823(d)(3) added by FIRREA does not have an impact on the attorney-client privilege at all because the words as grouped must be given a related meaning. They state that this language refers only to a "general class of extraordinary powers or exemptions rather than a particular category of evidentiary privileges."

However, as stated above, the parties agree that prior to the enactment of FIRREA caselaw upheld the right of FDIC–Receiver to assert the attorney-client privilege of the bank in receivership. The language entitling the FDIC–Receiver to assert this privilege, defendants concede, is contained in § 1821(d) which stated prior to FIRREA that "... the Corporation as such receiver shall have all the rights, powers and privileges now possessed by or hereafter granted by law to a receiver of a national bank ..." and in § 1821(e), "... the Corporation as such receiver [of an insured state bank] shall possess all the rights, powers and privileges granted by state law to a receiver of a state bank." *See* Defendants' Response to the FDIC's Motion For Leave to File New Statutory Authority and Request for

Further, unlike the state law relied upon in *McAtee, supra,* under Florida law a receiver of a failed institution may assert the attorney-client privilege of the defunct entity. *See* Fla.Stat. §§ 658.82 and 90.-502(3)(d).

Defendants argue that FIRREA cannot apply retroactively because it changes existing law and thereby affects antecedent rights. Defendants correctly assert that when antecedent rights are affected a statute operates prospectively only unless the clear import of the language and the intent of the legislature demonstrate that the statute is to have retroactive application. *See e.g. United States v. Security Industrial Bank,* 459 U.S. 70, 80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); *and United States v. Fernandez–Toledo,* 749 F.2d 703, 705 (11th Cir.1985).

 However, generally a new statute should apply to cases pending on the date of its enactment unless manifest injustice would result. *Fernandez–Toledo,* 749 F.2d at 705. When the new provision changes antecedent rights, typically manifest injustice would be the result of such retroactive application. *Ibid.* In light of the undersigned's conclusion below that FIRREA was intended to clarify existing law rather than change it, it is unnecessary to determine whether defendants would be subjected to "manifest injustice" with respect to the application of FIRREA.

FIRREA contains no provision which sets forth an effective date for the Act as a whole. There is little indication from the particular language used in the amendatory portions of the sections at issue here which would give a clue as to the intent of Congress in this regard other than the fact that the sections are intended to "amend" existing provisions in §§ 11 and 13 of the FDIC Act, 12 U.S.C. §§ 1821, 1823. *See* §§ 212, 217 of FIRREA. Nor does the

legislative history offer much help on this issue.

Defendants rely heavily in their argument for prospectivity on the comments of a Representative on the House floor during open debate on the bill just prior to its passage by the House. Representative Ortiz stated as follows:

> Mr. Speaker, I seek to clarify the intent and effect of the prospective application of the proposed bill. I understand that this bill would redefine and augment the powers of the Federal Deposit Insurance Corporation when that Corporation serves as a receiver for a failed financial institution. The powers set forth in this bill are, in many respects, new, and there is no intent that such powers be applied to receiverships that have been established prior to the enactment of this bill.

135 Cong.Rec. H5003 (daily ed. August 1, 1989).

The Congressional Record shows, however, that no other member of Congress rose to reply to Rep. Ortiz's remarks nor did his remarks follow those of any of his colleagues on this specific issue. Rep. Ortiz was not on any of the major committees which considered the new bill. In addition, no other legislative history can be found specifically commenting on whether the amendments to §§ 11 and 13 may apply retroactively.

Further, it is unclear which powers of FDIC–Receiver Rep. Ortiz addressed his remarks to or of which sections of the new bill he spoke. Strictly speaking he expressed his opinion that the "new" powers of the FDIC–Receiver have only prospective application. In addition, he did not speak of the rights and powers of FDIC–Corporate which has acquired assets pursuant to a purchase and assumption transaction.

Significantly, there is no dispute in the courts, nor among the parties here, that

Court to Take Judicial Notice (Dkt. 129) at p. 5, n. 3. Consequently, there is no reason to believe that the section added by FIRREA, using the same "rights, powers, privileges ..." language with regard to FDIC–Corporate as defendants concede granted to FDIC–Receiver the right to assert the attorney-client privilege of

Park Bank, conveys some different meaning. The language used in the new § 1823(d)(3) appears to be an attempt to clarify the right of the FDIC–Corporate to "step into the shoes" of FDIC–Receiver after engaging in the purchase and assumption process.

FDIC–*Receiver* could assert the attorney-client privilege of the failed institution prior to the enactment of FIRREA. *See Amundson, supra* at 986–987; *McAtee, supra* at 664; *Odmark v. Westside Bankcorporation, Inc.*, 636 F.Supp. 552 (W.D. Wash.1986) (dealing with FSLIC as receiver); *Berry, supra*, Civ. No. 1–85–62, slip op. (E.D.Tenn. June 3, 1985); *Ellis, supra*, Civ. No. CV84–PT2560–M, slip op. (N.D. Ala. December 19, 1985). Therefore, to the extent Rep. Ortiz's comments concern FDIC–Receiver, it is entirely possible that he was not referring to the right of FDIC–Receiver to assert the attorney-client privilege of the failed institution.

▬ An exception to the general rule of the prospective application of new legislation exists when a statute has been the subject of conflicting interpretations in the courts and is subsequently amended without any indication in legislative history that the amendment was intended to change the law. In such a case, the amendment is deemed not to change the law but to remove the dispute surrounding the interpretation of the section and to clarify the original intent of Congress in enacting the statute. *See In Re Fielder*, 799 F.2d 656,

660–661 (11th Cir.1986); *Brown v. Marquette Sav. and Loan Ass'n.*, 686 F.2d 608, 615 (7th Cir.1982). As previously noted, there was indeed a split of authority concerning whether FDIC–Corporate may assert the attorney-client privilege of a failed bank prior to the recent amendments to the FDIC Act. *Compare Berry and Ellis, supra, with Amundson and McAtee, supra.*

### D. Conclusion

▬ The undersigned concludes that the amendatory language should be deemed a clarification of existing law rather than a change of the prior provision.[5] Accordingly, plaintiff herein is entitled to assert the attorney-client privilege of Park Bank with respect to the documents at issue.[6] Therefore, the undersigned finds that defendants' first motion to compel should be DENIED.

### II. Second Motion To Compel

#### A. Introduction

Defendants' second motion to compel seeks production of post-closing[7] loan files from Park Bank loans which the plaintiff has identified supports its case for liability and damages.[8] The documents at issue

5. Prior to the passage of FIRREA, the only court within this circuit to address this issue fully was the Northern District of Alabama in *Ellis, supra*, in an opinion by Judge Robert B. Propst which upheld the right of the FDIC–Corporate to assert the attorney-client privilege of the defunct bank.

Ordinarily, though not binding, a district court should give serious consideration to the decisions of other district courts sitting within the same circuit until those decisions are overruled by the circuit court. *See Korzetz v. Amsted Industries, Inc.*, 472 F.Supp. 136, 139 (E.D. Mich., S.Div.1979); *Haleiwa Theatre Co. v. Forman*, 37 F.R.D. 62, 65 (D.Haw.1965). However, given the considerable conflict among the lower courts on this issue, the undersigned does not base the decision on this issue solely upon the opinion of the *Ellis* case. Given the determination that FIRREA applies to the claimed privilege in this case and mandates that FDIC may assert the attorney-client privilege here, it is unnecessary for the undersigned to expressly adopt the reasoning in the *Ellis* case. Congress, with FIRREA, has clarified its intent concerning the applicable statutory provisions.

6. The undersigned will not address defendants' claim of waiver with regard to the documents at issue. The argument was not raised during the initial briefing on the attorney-client privilege

issue concerning the first motion to compel nor at the hearing on the motions. In addition, such argument is outside the scope of the undersigned's order of September 19, 1989 granting leave for defendants to respond to arguments regarding the applicability of FIRREA. FDIC's Motion to Strike Cherry Bekaert's "Waiver" Argument as Violative of the Court's September 19, 1989 Order and Local Rules 3.01(b) and 3.04(a), and for Leave to Respond to its FIRREA Argument (Dkt. 131) is, therefore, GRANTED as to the motion to strike and DENIED as moot as to the request for leave to respond.

7. "Post-closing" in the context of defendants' second motion to compel means actions taken and documents created by the FDIC following its appointment as Park Bank's receiver. The documents at issue are files created by FDIC related to collection efforts with regard to certain loans assigned to FDIC–Corporate.

8. The particular document requests at issue seek the following:

13. Any and all documents, including all of Park's loan classified as substandard in the FDIC Report of Examination dated October 31, 1983.

chronicle FDIC–Corporate's efforts to collect on those "bad" loans which it purchased from FDIC–Receiver. Specifically, the documents apparently detail FDIC's attempted sale of the 27 loans with regard to which plaintiff claims defendants caused loss. In addition, the documents relate the disposition of collateral for those loans which were secured after the closing of Park Bank.

### B. Discoverability of Post–Closing Documents

■ Defendants seek the post-closing loan documents in order to rebut plaintiff's *prima facie* case on the issues of liability, causation and damages. In addition, defendants contend that the documents are relevant to show contributory negligence on the part of the directors and officers of Park Bank[9] and towards mitigation of damages by plaintiff.

Plaintiff, on the other hand, argues that public policy, rather than any discovery privilege, prevents discovery of the documents at issue. Plaintiff argues that the documents reflect efforts to marshal assets of a failed bank and carry out the FDIC's mandate to replenish the permanent insurance fund from which FDIC–Corporate drew to pay FDIC–Receiver $175 million to acquire the "bad loans."

FDIC conceded during the hearing before the undersigned that the FDIC files at issue reflect whether the bottom-line damages numbers provided to defendants are accurate. The FDIC contends, nevertheless, that discovery of the documents is against public policy. Plaintiff argues that because public policy mandates that the FDIC owes no duty of care with regard to the manner of its disposition of acquired assets, evidence relating to any negligence on the part of the FDIC is immaterial to the issues in the case. Nor, FDIC claims,

does it owe a duty to defendants to mitigate damages.

In support of its contention that the post-closing loan files are not discoverable, FDIC relies primarily on three cases: *Federal Savings and Loan Insurance Corporation v. David B. Roy*, No. JFM–87–1227, 1988 WL 96570 (D.Md., June 28, 1988) [retrievable on LEXIS at 1988 U.S. Dist. LEXIS 6840]; *Vogel v. Grissom*, No. CA3–89–467–D, order of magistrate (N.D.Tex. May 3, 1989) *aff'd.* by district court memo. op. (N.D.Tex. Sept. 7, 1989); and *Federal Savings and Loan Insurance Corporation v. Burdette*, 718 F.Supp. 649 (E.D.Tenn., N.Div.1989).

In *Roy*, a negligence action against former officers and directors of a failed savings and loan, the defendants sought discovery of documents relating to the FSLIC's efforts to work out specific loans in an effort to support their affirmative defenses of contributory negligence of the FSLIC in dealing with the assets of the failed institution. The court held that Congress established public policy in the creation of the FSLIC to preserve the integrity of the national savings and loan system by providing an insurance fund to cover the deposits of failed institutions. The court reasoned that the FSLIC owed no duty to the institutions or to "those whose negligence has brought them to the brink of disaster" with respect to working out specific loans because it would be contrary to public policy for the public to bear the the risk of errors of judgment by the FSLIC in attempting to save a failing institution. *Roy*, slip op., p. 4.

The *Roy* court, in refusing to permit discovery of FSLIC's work-out efforts and asset files, stated that

14. Any and all documents, including all loan files for any Park Bank loan, which form the basis of the FDIC's damage claim in this matter....

16. Any and all documents, including all "realization schedules," which refer, reflect or relate to any recovery on any loan assigned to the FDIC.

9. Defendants have apparently dropped their contention that the documents are relevant to a

claim of contributory negligence on the part of FDIC–Corporate with regard to the loans at issue. Despite making this argument in their memorandum, defendants indicated during the hearing on the second motion to compel that they were asserting the defense of contributory negligence only against Park Bank directors and officers and not the FDIC.

Concern for the preservation of the insurance fund argues strongly for early resolution of the questions here presented. If full-blown discovery were permitted in cases such as this as to all of FSLIC's activities vis-a-vis the failed bank, the costs of litigation which FSLIC would have to bear would be enormous.

*Roy,* slip op. at 4.

Further, the *Roy* court rejected defendants' argument, similar to the argument of defendants here, that the doctrine of proximate cause rendered material all of FSLIC's activities concerning working out specific loans. The court stated that "the only causal connection which may properly be required by application of the doctrine of proximate cause" was whether the defendants' breach of the duty owed to the financial institution was, at least to some degree, the proximate cause of FSLIC having to take some control over the affairs of the failed institution. *Ibid. See also Vogel, supra,* slip op., p. 2 (holding that the causation argument is "one based on semantics rather than a distinction from the non-availability of a defense based upon the negligence of the FDIC. . . .").

In addition, case law rejects the application of the defense of mitigation of damages in a suit brought by the FDIC (or its sister entity FSLIC) against officers and directors of a failed institution. *See Burdette, supra,* p. 657. In *Burdette* the court stated that:

> . . . even accepting the directors' and officers' contentions that a mitigation defense does not require the existence of a duty by the FSLIC . . . this does not alter the court's holding [that] the policy against having the public bear any losses due to errors in judgment by the FSLIC as a receiver for a failed institution still applies. . . .

*Id.* at p. 657. *See also FDIC v. Berry,* 659 F.Supp. 1475, 1483 (E.D.Tenn.1987) ("insurance provided by the FDIC is insurance benefitting the depositors of the bank, not an indemnification of its officers and directors. . . . [T]his reasoning applies to affirmative defense assertions of contributory negligence, estoppel, and mitigation of damages. . . ."); *See also Federal Deposit Ins. Corp. v. Greenwood,* 719 F.Supp. 749, 750 (C.D.Ill.1989) ("the decision of the FDIC ... to sell certain loans as a bulk sale rather than incur considerable expense involved in collecting certain assets cannot be the basis of reduction of the FDIC's claims").

*Cherry Bekaert* takes the position that the *Roy, Burdette,* and *Berry* line of cases are distinguishable because those cases involve suits against officers and directors of a failed bank for negligence in causing the bank to fail and that since plaintiff has not alleged that *Cherry Bekaert* caused the bank to fail these cases are not applicable.

However, other cases have found the FDIC owed no duty towards other individuals regardless of their status or whether they had caused the bank's failure. *See Emch v. United States,* 630 F.2d 523 (7th Cir.1980) (no duty to warn bank stockholder owed by FDIC); *FDIC v. Jennings,* 615 F.Supp. 465 (W.D.Okla.1985) (no duty on part of FDIC to disclose bank's deteriorating financial condition to bank's auditors).

The undersigned finds that there is no reasonable basis and no support in the case law to treat a failed bank's outside accountants any differently than the bank's officers and directors with regard to affirmative defenses of contributory negligence, mitigation of damages, or with regard to discovery of post-closing collection efforts in a suit such as the case at bar. Nor should a distinction be drawn between FDIC–Receiver and FDIC–Corporate with regard to discovery of post-closing FDIC-generated documents. The FDIC–Corporate is still acting in the public interest to replenish the insurance fund because it has been forced to expend money from such fund to purchase "bad loans." [10]

Cases such as *Roy, Burdette, Vogel,* and *Greenwood* support the proposition that

---

10. The federal policies underlying the creation of the FDIC are promoting the stability of and confidence in the nation's banking system. *Gunter, supra* at 870. As discussed in *Gunter,* the purchase and assumption process is often the best method of promoting these goals because ". . . it avoids the spectre of closed banks and the interruption of daily banking services." *Ibid.*

second-guessing the efforts of the FDIC in carrying out its duties with regard to marshaling the assets of a failed institution is against public policy whether couched in terms of contributory negligence, proximate cause, or mitigation of damages. *Roy* and *Vogel* expressly held that discovery of FDIC-generated files reflecting post-closing efforts to replenish the insurance fund and marshal assets in general, in an attempt to establish such defenses, is similarly contrary to public policy.

In addition, the undersigned finds that *FDIC v. Harrison,* 735 F.2d 408 (11th Cir. 1984), cited by defendants, in which the FDIC–Corporate sued a guarantor in a debt collection action relating to acquired assets, does not alter the conclusion that the post-closing FDIC documents at issue here are not discoverable. The *Harrison* case held that the defendants could assert an equitable estoppel defense against the FDIC when the FDIC acts in its corporate capacity to collect a debt acquired from an insolvent bank. The case did not discuss the discoverability of post-closing, FDIC-generated, documents relating to disposition of acquired assets.

Although the *Harrison* court held that FDIC–Corporate when attempting to collect on a debt acquired from an insolvent bank was performing essentially the same function as any other assuming bank in the same position, the holding of the case was limited to the ability to assert an estoppel defense against FDIC–Corporate. The only reported cases dealing directly with discovery of post-closing FDIC-generated documents in the purchase and assumption context held that public policy prevented discovery of such information. *See Roy* and *Vogel, supra.*

While Rule 26, Fed.R.Civ.P. generally contemplates broad discovery, courts must, nevertheless, balance strong public policies against a party's need for the information whenever conflict between the two arises. *See United States v. Arthur Young & Co.,* 677 F.2d 211, 219 (2d Cir.1982). In the case at bar, public policy favors aiding the FDIC in the swift and efficient disposition of the assets of a failed bank and in replenishing the insurance fund for the benefit of the public at large. *See Gunter, supra* at 870. This overriding public policy outweighs defendants' interests and prevents disclosure of the FDIC files sought by Cherry Bekaert.

Finally, defendants' also contend that the post-closing documents will show that the diminution in value of the loans at issue was proximately caused by the negligence of Park Bank's officers and directors, rather than the conduct of defendants. As discussed above, *Roy* and *Vogel* rejected similar proximate cause arguments. Moreover, plaintiff has represented at the hearing before the undersigned on the motions to compel that the documents at issue contain no analysis whatsoever with regard to the conduct of Park Bank officers and directors concerning these loans. In any event, information, if any, supporting defendants' proximate cause defense should be contained in pre-closing loan documents created by Park Bank.

### C. Conclusion

Accordingly, for the reasons stated above, the undersigned finds that the post-closing FDIC documents sought by defendants are not discoverable and, therefore, defendants' second motion to compel should be DENIED.

It is, therefore,

ORDERED:

(1) that Defendants' Motion to Compel Production of Documents (first motion to compel) (Dkt. 102) is DENIED;

(2) that Defendants' Second Motion to Compel Production of Documents (Dkt. 117) is DENIED;

(3) that FDIC's Motion to Strike Cherry Bekaert's "Waiver" Argument As Violative of the Court's September 19, 1989 Order and Local Rules 3.01(b) and 3.04(a), and for Leave to Respond to its FIRREA Argument (Dkt. 131) is GRANTED as to the the motion to strike and DENIED as moot as to the request for leave to respond.

DONE and ORDERED.