**George SUTTON, as Commissioner of Financial Institutions in possession of Tracy Collins Bank & Trust Company, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**Civ. No. 90–C–260G.**

United States District Court,
D. Utah, C.D.

Nov. 2, 1990.

---

**482**

Billy L. Walker, Salt Lake City, for plaintiff.

W. Cullen Battle, Fabian & Clendenin, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly on September 20, 1990 for hearing on Cross Motions for Summary Judgment pursuant to a Joint Stipulation of Facts. Plaintiff was represented by Billy L. Walker and defendant was represented by W. Cullen Battle. After briefing by the parties and oral argument, the court took the motions under advisement. Now, being fully advised, the court sets forth its Memorandum Decision and Order.

### FACTUAL BACKGROUND

This case involves consideration of the authority of the Federal Deposit Insurance Corporation ("FDIC") to withhold payment of funds to the Utah State Commissioner of Financial Institutions ("Commissioner") which funds in turn are to be used to discharge certain liabilities of the Commissioner to three former officers and directors of the defunct Tracy Collins Bank & Trust Company. Tracy Collins was a Utah chartered banking corporation with deposits insured by the FDIC.

On December 30, 1988, the Commissioner, pursuant to Utah Code section 7–2–1 (1988), determined that Tracy Collins was a failing depository institution within the meaning of section 7–19–1 of the Utah Code. On that date, the FDIC entered into an "Assistance Agreement" with Continental Bank and Trust Company and its parent Moore Trust Company (collectively "Continental") and the Commissioner. *See* 12 U.S.C. § 1823 (FDIC authorized to enter into assistance agreements). Under the Assistance Agreement, the FDIC provided $20,451,502 to enable the Commissioner and Continental to enter into a Purchase and Assumption Agreement, also dated December 30, 1988. The FDIC also agreed under Section 4.7 of the Assistance Agreement to provide to the Commissioner sufficient funds to discharge any liabilities to creditors of Tracy Collins that had not been assumed by Continental. Section 4.7 of the Assistance Agreement provides, in pertinent part:

4.7 *Funds for Non–Assumed Claims.* The FDIC agrees to provide the Commissioner with sufficient funds to discharge liabilities to creditors of Tracy Collins not assumed by Continental; provided however, that such nonassumed creditors have filed timely, valid claims with the Commissioner and he has allowed said claims pursuant to applicable State law. . . .

The FDIC reserves the right to file an objection to any claim allowed by the Commissioner pursuant to Title 7, Chapter 2, Section 6(9) of the Utah Financial Institutions Act. It is expressly understood by and between the Parties hereto that the FDIC has undertaken to provide the Commissioner with sufficient cash to pay nonassumed creditor liabilities of Tracy Collins. The FDIC shall pay to the Commissioner sufficient funds to discharge liabilities of Tracy Collins within thirty (30) days following the date the Commissioner has allowed the claim *unless the FDIC elects to dispute the claim, in which case the funds shall be paid to the Commissioner within thirty (30) days of the court's resolution of the claim.*

Assistance Agreement § 4.7 (emphasis added).

Sometime after the Commissioner took possession of Tracy Collins on December 30, 1988, Charles Canfield, Ted May and Ben Armstrong filed claims as creditors of Tracy Collins in the amounts of $140,000, $85,600 and $70,000 respectively. These three individuals were directors and officers of Tracy Collins at the time the Commissioner took possession of the bank: Mr. Canfield was a director and at various times was President, Executive Vice President, Vice Chairman of the Board, and Chief Executive Officer with duties supervising the loan department; Mr. May was Executive Vice President and director; and Mr. Armstrong was an Executive Vice-President and director of Tracy Collins. The claims by these three individuals are based on identical "executive agreements" between each of them and Tracy Collins. The respective executive agreements, sometimes called "golden handcuff" agreements, provided that if they would continue their employment with Tracy for a period of approximately eleven weeks, from Au-gust 11, 1987 through November 1, 1987, they would be entitled to a sum equal to their yearly salaries in the event of any change in ownership of Tracy. The agreements did not require that the executives' employment terminate to qualify for the lump sum payments. The executives' claims were not assumed by Continental under the Purchase and Assumption Agreement.

On April 3, 1989, the Commissioner sent notices allowing the claims of the executives in their entirety. The Commissioner's allowance of the claims was an administrative action taken pursuant to Section 7–2–6(4) (1988) of the Utah Code. On May 2, 1989, pursuant to Section 7–2–6(9) (1988) of the Utah Code, and pursuant to Section 4.7 of the Assistance Agreement, the FDIC objected to the Commissioner's allowance of the claims of the three executives. Thereafter, on August 2, 1989, after a hearing on the FDIC's objection, the Utah Third District Court entered an order approving the Commissioner's allowance of the claims, finding that the Commissioner did not act arbitrarily or capriciously in allowing the claims. The FDIC did not appeal the state court's decision.

Following the Commissioner's decision to allow the executives' claims, but prior to the state court decision of August 2, 1989, the FDIC indicated to the Commissioner that it was investigating claims of negligence, breach of fiduciary duty, insider abuse and waste of corporate assets against the three executives and other former directors and officers of Tracy Collins. The FDIC had the right to pursue such claims under section 4.1 of the Assistance Agreement.[1] The FDIC asked the Commissioner to defer payment on the executives' claims pending the completion of its investigation to enable the FDIC to establish a right of offset. By letter dated August 31, 1989, the Commissioner agreed to defer

---

1. Section 4.1 of the Assistance Agreement provides that the FDIC acquired from the Commissioner certain assets of Tracy Collins, including:

(f) any chose in action or claim, action or judgment, whether known or unknown, which Tracy Collins owns, holds, or has against any of its directors, officers, employees, attorneys, accountants, agents, shareholders, or holding company arising out of any act or omission of any such person in such capacity or against any surety, insurer or like person or entity for payment of such claims, actions or judgments.

Assistance Agreement § 4.1(f).

payment of the executives' claims until December 31, 1989, which was the date the FDIC anticipated its investigation would be complete.[2]

On December 26, 1989, an attorney with the FDIC professional liability section wrote to the Commissioner advising him that their inquiry against the three executives was virtually finished and that it was likely that a civil complaint would soon be filed against them. The letter also indicated that funds to satisfy the executives' claims had been escrowed by the FDIC, and in the event that a complaint was not filed then the FDIC would turn these funds over to the Commissioner in short order.

On January 30, 1990, the Commissioner advised the FDIC that it would no longer defer payment of the executives' claims absent more information from the FDIC establishing that the FDIC had reasonable grounds to establish a right of offset against those claims. On January 18, 1990, the FDIC requested a further deferral from the Commissioner but details of the FDIC's insider abuse investigation were not provided to the Commissioner because he was unwilling to guarantee confidentiality of such information from the three executives. By letter dated January 30, 1990, the Commissioner denied the FDIC's request to further defer payment on the executives' claims and the Commissioner demanded payment from the FDIC to fund the claims pursuant to Section 4.7 of the Assistance Agreement. When the FDIC did not comply with the Commissioner's demand letter, on February 26, 1990, the Commissioner commenced this action in state court. The case was subsequently removed to this court by defendant FDIC.

On June 21, 1990, the FDIC filed a civil lawsuit in this federal district court against the three executives Canfield, May and Armstrong, as well as against other former directors and officers of Tracy Collins, alleging acts of negligence, breach of fiduciary duty and other acts of insider abuse,

seeking damages in excess of $7 million. That case, *FDIC v. Canfield, et. al.,* Civil No. 90–C–541S, has been assigned to the Honorable Judge David Sam of this court. The three executive contracts are part of the insider abuse allegations in the case before Judge Sam.

## DISCUSSION

The essential question in this case is whether the application of the Federal Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") permits the FDIC to modify the terms of an assistance agreement entered into by the FDIC prior to the effective date of FIRREA.

The Commissioner's argument in support of his Motion for Summary Judgment is very straightforward. His position simply is that the FDIC has breached its contractual duty under Section 4.7 of the Assistance Agreement by failing to remit the necessary funds to the Commissioner to pay the three executives' claims. The Commissioner argues that the FDIC should not be allowed to continue to refuse to pay the Commissioner the amounts needed to fund those claims since the validity of those claims has been finally and judicially determined in State court.

The FDIC concedes that its refusal to pay the Commissioner the amount necessary to fund the executives' claims is in violation of the Assistant Agreement, but only with respect to the *time* in which those funds are to be paid. The FDIC's primary argument in support of its Motion for Summary Judgment is that FIRREA retroactively applies to this case and that it permits the FDIC to defer the time of payment of the Executives' claims—despite Section 4.7 of the Assistance Agreement which provides that such funds "shall be paid to the Commissioner within thirty (30) days of the [State] court's resolution of the claim." Alternatively, the FDIC argues

---

2. The Commissioner deferred payment of the executives' claims pursuant to Utah Code section 7–2–6(4)(f) (1989), which provides:

   The commissioner may defer payment of any claim filed on behalf of a person which

was at any time in control of the institution within the meaning of Section 7–1–103, pending the final determination of all claims of the institution against that person.

that federal common law permits such a deferral by the FDIC.

In analyzing the respective positions of the parties, it is necessary to consider whether FIRREA may be applied retroactively, since the Assistance Agreement in this case predated its enactment, and if so, whether FIRREA gives the FDIC the power to modify the payment terms of the Assistance Agreement.

## I. *Retroactive Application of FIRREA*

■ The Financial Institutions Reform, Recovery and Enforcement Act was a major piece of legislation that was enacted on August 9, 1989 to address the significant problems currently facing the banking and thrift industry in the United States. In passing FIRREA, Congress modified the federal regulatory framework governing financial institutions. FIRREA abolished the Federal Savings and Loan Insurance Corporation ("FSLIC") and the Federal Home Loan Bank Board, and expanded the duties and powers of the FDIC.

The court agrees with defendant FDIC and the weight of authority that FIRREA applies to pending cases. In *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court stated "a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. *See also City of Colorado Springs v. United States*, 724 F.2d 857, 859 (10th Cir.1983) (recognizing and applying the *Bradley* standard). Numerous courts, including this court, have found it appropriate to apply FIRREA to cases pending on its effective date. *See, e.g., Castleglen, Inc. v. Commonwealth Savings Ass'n*, 728 F.Supp. 656, 672–74 (D.Utah 1989) (Winder, J.); *Ward v. Resolution Trust Corp.*, 901 F.2d 694 (8th Cir.1990); *Triland Holdings & Co. v. Sunbelt Service Corp.*, 884 F.2d 205, 207 (5th Cir.1989); *FDIC v. Howse*, 736 F.Supp. 1437, 1445–46 (S.D.Tex.1990); *FDIC v. Cherry, Bekaert & Holland*, 129 F.R.D. 188, 191–93 (1989), *reconsid. granted in pt. on other grounds*, 131 F.R.D. 202 (M.D.Fla.1990).

■ Under the above authorities, even though FIRREA was enacted on August 9, 1989, over seven months after the December 30, 1988 effective date of the Assistance Agreement in this case, its provisions apply to the resolution of this case. This conclusion, however, does not end this matter. What remains to be determined is whether the defendant FDIC is permitted under FIRREA to modify or revoke section 4.7 of the Assistance Agreement and extend the time in which the FDIC had agreed to provide funds to the Commissioner to satisfy the accrued claims of the three Tracy Collins executives.

## II. *Application of FIRREA § 1823(d)(3)(A) to the Assistance Agreement in this Case*

FIRREA amended Section 13 of the Federal Deposit Insurance Act, codified at 12 U.S.C. § 1823, which is the section governing FDIC funds—including the power and authority of the FDIC to render financial assistance to federally insured financial institutions. Section 1823, before and after the FIRREA amendments, is the statute under which the FDIC had authority to enter into the Assistance Agreement with the Commissioner and others to facilitate the transfer of control of the failing Tracy Collins Bank to Continental Bank. Specifically, FIRREA expanded the FDIC's power with regard to such assistance agreements by adding the following to Section 1823:

> With respect to any *asset acquired* or *liability assumed* pursuant to this section [*i.e.* 12 U.S.C. § 1823], the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title.

12 U.S.C. § 1823(d)(3)(A) (1989) (emphasis added).

This new provision to Section 1823 is what defendant FDIC claims grants it the authority to further defer payment to the Commissioner of the funds necessary to satisfy the executives' claims. As discussed *supra*, the FDIC "acquired" assets

and "assumed" liabilities under Sections 4.1 and 4.7, respectively, of the Assistance Agreement. The FDIC was acting in its corporate capacity pursuant to 12 U.S.C. Section 1823 when it entered into the Assistance Agreement; however, the newly enacted Section 1823(d)(3)(A) effectively gives the FDIC corporate "all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b)" of Title 12. 12 U.S.C. § 1823(d)(3)(A) (1989). The question still remains, however, whether the FDIC, even with the powers of a "receiver under sections 1821 and 1825(b)," has the power or authority to modify the terms of a contract in which the FDIC itself is a party.

■ This court's review of Sections 1821 and 1825(b) does not reveal that the power and authority of the FDIC, in its corporate or receiver capacity, encompasses the power to modify its own contracts. Under Section 1821 the FDIC clearly has the authority to adjust claims or modify contracts between the failed financial institution and creditors of that institution. *See* 12 U.S.C. §§ 1821(d)(5)(D), 1821(e). However, nothing in Section 1821 or 1825(b) gives the FDIC this same authority with regard to contracts in which it is a party. If such authority did exist, then any assistance agreement or other contract in which the FDIC was a party would be illusory since its terms could be modified or repudiated at the unilateral discretion of the FDIC.[3] Such a rule would also be at odds with provisions within Section 1823 which specifically address the enforceability of assistance agreements. *See* 12 U.S.C. § 1823(c)(4)(B) (FDIC can enter into and enforce agreements); 12 U.S.C. § 1823(c)(2)(C) (allowing FDIC 60 day stay in connection with assistance agreement

issues). Similarly, the court is unpersuaded that federal common law gives the FDIC the unilateral right to modify the terms of its own contracts.

■ The FDIC has argued that the Commissioner is merely a conduit for the transfer of funds, and that as a practical matter the FDIC would be paying these funds directly to the executive claimants. Under all the facts and circumstances of this case, however, the court does not consider the Commissioner to be a mere transfer agent or conduit. The Assistance Agreement provided the Commissioner with many powers and responsibilities, including the power to determine the validity of claims made by creditors of Tracy Collins. Only after such claims have been determined to be valid by the Commissioner, and after the FDIC has been given an opportunity to seek judicial review of the Commissioner's decisions in this regard, does the Commissioner have a duty like unto a transfer agent by collecting the necessary funds from the FDIC and passing them on to pay the accrued claims of creditors. *See* Assistance Agreement at § 4.7.

### III. *Further Deferral of Payment of the Claims Because of Possible Offset*

■ Manifestly, the FDIC cannot avoid the fact that it entered into a legally enforceable contract with the Utah State Commissioner of Financial Institutions and that it is in breach of that contract by failing to remit the necessary funds to the Commissioner to satisfy the liquidated claims of the three executives. The court knows of nothing in FIRREA or other federal law that can be fairly construed to give the FDIC the unilateral right to modify the terms of the Assistance Agreement.

---

**3.** Defendant FDIC's Memorandum in Support of its Motion for Summary Judgment refers to two cases that have applied Section 1823(d)(3)(A). However, neither of these cases stands for the proposition that this newly enacted provision gives the FDIC the power to alter the terms of a contract in which the FDIC itself is a party. In *FDIC v. Howse,* 736 F.Supp. 1437 (S.D.Tex.1990), the court held that the FDIC acting in its corporate capacity was able to use the statute of limitations provision applicable to the FDIC in a receiver capacity because "§ 1823(d)(3)(A) was intended to give FDIC corporate the same rights and powers as FDIC receiver under § 1821." *Id.* at 1445. Similarly, in *FDIC v. Cherry, Bekaert & Holland,* 129 F.R.D. 188 (1989), *reconsid. granted in pt. on other grounds* (M.D.Fla.1990), a United States magistrate ruled that Section 1823(d)(3)(A) applies to pending cases, allowing the FDIC in its corporate capacity to assert the attorney-client privilege applicable to FDIC acting as a receiver.

Notwithstanding the foregoing, the court is mindful of the strong public policy argument in favor of the FDIC's view that the funds in question should not be remitted to the three executives without regard to the claims of offset which have been asserted by the FDIC. The FDIC has numerous insider abuse claims against these same three executives, and the same "executive contracts" are cited as an example of their allegedly wrongful conduct in the FDIC's Complaint in the case currently before the Honorable Judge David Sam. The FDIC's argument is bolstered by the overall theme of the recent FIRREA legislation which seeks to give the FDIC greater power to recover public funds lost during the country's ongoing banking crisis. However, the merits of the FDIC's dispute with the three former Tracy Collins executives and the possible offset of those claims is not before this court. Those matters are before Judge Sam. There is no offset issue between the parties in this case.

Based on the foregoing,

IT IS HEREBY ORDERED, that plaintiff's Motion for Summary Judgment is GRANTED and defendant's Motion for Summary Judgment is DENIED;

IT IS FURTHER ORDERED, that the effective date of this decision is stayed for thirty (30) days from the entry date of the decision to allow defendant FDIC, if it so desires, to file a motion under Rule 64 of the Federal Rules of Civil Procedure, for a pre-judgment writ of attachment or other motion in the case of *FDIC v. Canfield, et. al.,* Civil No. 90–C–541S, currently before the Honorable Judge David Sam of this court, to defer immediate payment of the money the FDIC owes to the Commissioner to fund the accrued claims of Charles Canfield, Ted May and Ben Armstrong;

IT IS FURTHER ORDERED, that if such a motion is filed by the FDIC within thirty days, this decision is further stayed until such time as such motion is ruled upon by Judge Sam.

IT IS SO ORDERED.