**FIRST TEXAS SAVINGS ASSOCIA-TION, First Gibraltar Bank, FSB, Plaintiffs,**

v.

**COMPROP INVESTMENT PROPERTIES LTD., et al., Defendants.**

**No. 89–93–CIV–T–17.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 8, 1990.

---

Gregory E. Mierzwinski, Henry A. Stein, Rudnick & Wolfe, Tampa, Fla., for plaintiffs.

Simson Unterberger, Tampa, Fla., for Glenn James, receiver.

Edward M. Waller, Jr., Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., John A. Grant, Jr., Peaveyhouse, Grant, Clark, Charlton, Opp & Martino, P.A., Gregory R. Riehle, Shumaker, Loop & Kendrick, Edna Elliott, J.D., P.A., Timothy A. Hunt, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., Michael B. Lee, Fouts & Moore, Houston, Tex., Clifford R. Opp, Jr., Peavyhouse, Grant, Clark, Charlton, Opp & Martino, P.A., Tampa, Fla., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff, Federal Deposit Insurance Corporation's Motion for Summary Judgment Un-

der FIRREA as to Defendant's Counterclaims.

## FACTS

The facts as alleged in Plaintiff's Memorandum of Law in Support of it's Motion for Summary Judgment indicate Plaintiff, First Gibraltar Bank, FSB, and Defendants Comprop Investment Properties Ltd. through its general partner, Gulf South Resources, Inc., entered into an agreement for construction loan financing on real property located in Hillsborough County, Florida. This financing was also secured by a First Real Estate Mortgage and Security Agreement and a personal guaranty that was executed by the Co-Defendants, Harvey and Suzan Estes. The Note contained a one-year term and was to mature in December of 1986. However, prior to the maturity date of the note, a Renewal and Extension agreement was entered into by the parties extending the maturity date to March 19, 1987. Subsequently, two forbearance of enforcement agreements were entered into between the parties, extending the time for Defendants' performance until August 31, 1987. In October of 1987, First Texas commenced an action to foreclose the Mortgage and to enforce the Note and Guaranty provisions against the parties. Defendants, Comprop and the Estes, asserted affirmative defenses and counterclaims, alleging, *inter alia*, fraudulent inducement and breach of contract by First Texas.

On December 27, 1988, the Federal Home Loan Bank Board declared First Texas to be insolvent and appointed the FSLIC as Receiver for First Texas. On December 28, 1988, pursuant to an acquisition agreement between the FSLIC and First Gibraltar, First Gibraltar acquired all of the secured assets of the insolvent First Texas, which included the collective loan documents for Comprop and the Estes (i.e. the Note, Mortgage, Guaranty, Renewal and the Forbearance agreements). On January 19, 1989, this Court granted FSLIC's Petition for Removal of this action from the Thirteenth Judicial Circuit Court in and for Hillsborough County, and by Order dated April 11, 1989, this Court granted First Gibraltar's Motion to Intervene as Party Plaintiff.

On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989, P.L. 101–73, 103 Stat. 183 ("FIRREA") was signed into law, and all of the FSLIC's interest in the unsecured liabilities of First Texas were assigned to the FDIC as manager of the FSLIC Resolution Fund.

Plaintiff, FDIC, requests Summary Judgment based upon three allegations contained in its Motion:

1. FIRREA provisions apply retroactively to the instant case.

2. Once FIRREA provisions are applied, Counterclaimants are unable to recover any judgment that the Court may award because the FSLIC, as receiver for First Texas Savings Association, FSB, has made an initial determination of insolvency and has liquidated First Texas' assets to satisfy secured creditors' interests.

3. Therefore, even if Defendants' pursuit of counterclaims is successful, since Counterclaimants seek monetary relief, they would become general unsecured creditors seeking monetary relief from an insolvent, liquidated institution. As a result, Defendants claims are moot.

Because no monetary relief is available to Counterclaimants, FDIC requests Summary Judgment on the grounds of mootness.

## STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting

*Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, " 'Rule 56(e) therefore requires that non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.' " *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The question before the Court is whether the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), which precludes recovery by unsecured creditors of insolvent institutions, renders Defendants's Counterclaims moot.

## DISCUSSION

This Court finds that several factors in Plaintiff's case have not been proven, and these factors prevent this Court from granting summary judgment. First, Plaintiff asserts that as a matter of law that Financial Institutions Reform, Recovery and Restitution Act, (FIRREA), applies retroactively to this case, despite the fact that no such ruling has been made by this court, nor is such a determination sought by Plaintiff in its Motion for Summary Judgment.

 The Court recognizes that the Federal Home Loan Bank Board enjoys broad discretionary powers to regulate the savings and Loan industry since its purpose is to safeguard the industry's financial stability and to promote public confidence. In an effort to further these goals, the FIRREA was enacted and has continually been amended and modified. The Court notes that provisions of the FIRREA have been applied retroactively in cases involving removal, *Texas Commerce Bank v. Capital Bancshares, Inc.*, 907 F.2d 1571 (5th Cir.1990), extension of limitations periods, *FDIC v. Howse*, 736 F.Supp. 1437 (S.D. Tex.1990), and clarification provisions, *FDIC v. Cherry, Bekaert & Holland*, 129 F.R.D. 188 (M.D.Fla.1989). However, retroactive application of a new statute to pending cases is not automatic, but is a determination for the Court to make in light of the substantial impact on a party's rights and the possibility of manifest injustice. Therefore, when antecedent rights are affected, a statute can only operate prospectively, unless the clear import of the language and the intent of the legislature demonstrate that the statute is to have retroactive application. See e.g. *United States v. Security Industrial Bank*, 459 U.S. 70, 80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); and *United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985). FIRREA contains no provisions which set forth an effective date for the Act as a whole. Further, there is little indication from the particular language used that portions applicable to the case at bar are intended to clarify rather than amend existing provisions of the FDIC Act, 12 U.S.C. § 1821. In fact, the bill seems to augment the powers of the Federal Deposit Insurance Corporation. As a result, in determining whether or not to apply a decision retrospectively, this Court must apply the "manifest injustice" test enunciated in *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

 In applying the *Bradley* test, the Court examines three determinative factors to determine if a retrospective application would work a manifest injustice; (1) the nature of the parties, (2) the nature of their rights, and (3) the nature of the impact that a change in law imposes upon a party's rights. *Id.*, 94 S.Ct. at 2009. Once the *Bradley* test has been applied, statutes that affect procedure or remedy are more

likely to be applied retroactively, than statutes that affect antecedent rights. *Watkins Motor Lines, Inc. v. I.C.C.*, 641 F.2d 1183 (Fifth Cir.1981) Ft.nt. 3 citing *United States v. Vanella*, 619 F.2d 384, 385–86.

■ In the instant case, Plaintiff's motion and supporting memorandum of law do not address the issue of whether FIRREA is procedural or remedial in nature. Further, any application of the *Bradley* three-pronged test involves factual determinations, which are not the proper subject of a summary judgment determination. Therefore, because factual determinations are requisite to determining the retroactive application of the statute, this Court will not summarily determine whether or not the FIRREA should apply retroactively in the case at bar.

Plaintiff further alleges that under Section 212 of FIRREA, the FDIC's maximum liability to any person or entity having a claim against a failed institution, is limited to the amount the claimant will receive if the failed institution is liquidated. Plaintiff contends that since the proceeds from the sale of First Texas' assets were only sufficient to satisfy secured creditors' claims, pursuant to the provisions of the FIRREA, Counterclaimants, as unsecured creditors, should receive nothing. Accordingly, since no monetary relief is available, Defendants request that the Court dismiss the counterclaims as moot.

Such a determination would directly contradict the holding of *Coit Independent Joint Venture v. Federal Savings & Loan*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), because the FSLIC is attempting to adjudicate the validity of a creditor's claims. In *Coit*, the Court held that 12 U.S.C. § 1464 only empowered the FSLIC to settle, compromise and release creditors' claims, not to adjudicate the validity of creditors' claims against insolvent institutions under FSLIC receivership. Instead, *Coit* recognized that 12 U.S.C. § 1729 con-

fers upon the FSLIC *inter alia*, the power to pay all *valid* credit obligations of an association in default. *Id.* 109 S.Ct. at 1367. In addition, the statute specifically limited the FSLIC's powers by subjecting them to judicial review.[1]

Although the distinction between settlement and adjudication may be a close question, the *Coit* decision indicates that the FSLIC is only empowered to pay claims proved to its satisfaction, and that where settlement or compromise are not effective, the parties are empowered to take their dispute to court for resolution. Consequently, the FSLIC is neither empowered to adjudicate disputes with the force of law, nor allowed to determine the invalidity of creditors' claims. *Id.* 109 S.Ct. at 1368.

However, as stated above, a determination of the retroactive applicability of FIRREA is a factual determination and is not the proper subject of a summary judgment proceeding. Since Plaintiff's presumptive conclusion that, had First Texas been liquidated, Counterclaimants would have received nothing, hinges upon the retroactive application of the FIRREA provisions, it too is not the proper subject for summary judgment.

■ Next, Plaintiff states that FSLIC-receiver entered into a purchase and assumption transaction with First Gibraltar Bank, FSB, for substantially all of the assets of the fallen First Texas Savings Association. Under the terms of the acquisition agreement, Gibraltar assumed First Texas' liabilities to depositors to the extent of the deposits, as well as First Texas' liabilities to secured creditors, to the extent of the value of their securities. Gibraltar did not agree however, to assume any liability with respect to existing or potential claims against First Texas, arising out of the assumption of First Texas' Assets (P. 7 Plaintiff's memo). The question that must be addressed under this factual setting is whether the contractual agreement between First

---

1. The statute reads:
"[FSLIC] shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions and to do all other things that may be necessary in connection therewith, subject only to the *regulation of the court* or other public authority having jurisdiction over the matter." 12 U.S.C. § 1729(d). Emphasis added.

Gibraltar and FSLIC–Receiver extinguished Defendants' rights to raise alleged counterclaims. This Court finds that it did not.

In this case, Defendants were not involved with any transaction between Gibraltar and FSLIC despite that counterclaims had been filed against First Texas prior to its liquidation. In addition, FSLIC could have contracted with Gibraltar to assume some liability, albeit limited, to protect obligor First Texas' rights, but it did not. Hence, Gibraltar assumed the note with notice of potential claims, and as such, did not attain Holder in Due Course Status. Consequently, necessary procedural due process concerns dictate that Defendants' rights must be protected and summary judgment denied.

Finally, FSLIC argues that there will never be assets with which to satisfy a judgment against First Texas, nor any means to collect from any other party and therefore, Defendant's counterclaims are moot and should be disposed of summarily. Plaintiff relies upon the holding in *Triland Holdings & Company v. Sunbelt Service Corp.*, 884 F.2d 205 (5th Cir.1989), as support for its mootness argument. However, the Court in *Triland* was addressing an appellate argument where factual determinations had been made in the lower court's record. In addition, *Triland*, 884 F.2d at 208, citing *Ratner v. Sioux Natural Gas Corp.*, 770 F.2d 512, 516 (5th Cir.1985) stated:

> In its appellate briefs, FSLIC responds by arguing that there will never be any assets with which to satisfy a judgment against Sunbelt Savings nor any means to collect from any other party, including FSLIC. *If true*, this contention would justify dismissal of these actions on prudential grounds. *Triland*, 884 F.2d at 208.

Emphasis added.

However, the *Triland* court found the record from the trial court conspicuously void of any asset determination, and as a result, it was unable to determine whether or not a judgment could be satisfied. Accordingly, the Court remanded the case to the district court for a determination of whether assets might become available in the future to pay claims of unsecured creditors. By remanding the case the Court clearly indicated that it contemplated that ascertaining which assets are available to satisfy judgments is a factual matter. *Id.* at 208.

■ Plaintiff urges this Court to recognize that Defendants' counterclaims, if successful, will necessarily be difficult because all of First Texas' assets have been assumed by Gibraltar. The *Triland* court addressed this argument by formulating the general rule that difficulty in formulating a remedy does not make a case non justiciable. *Triland*, 884 F.2d at 205. Nevertheless, Plaintiffs contend that Defendants, if successful as Counterclaimants, would assume the role of general unsecured creditors and have no available assets to satisfy their claims. Plaintiff urges this Court to adopt the presumption that no recovery is possible for Defendants. However, applying the *Triland* reasoning to the case at bar, this Court cannot summarily determine the non-availability of assets with which to satisfy Defendants' counterclaims.

■ The essential question is whether the Court can grant relief that will redress wrongs asserted in Defendants' counterclaims. This Court agrees with and adopts the *Triland* reasoning and rejects Plaintiff's contention that Defendant's counterclaims should be rendered moot merely because a remedy may be difficult to formulate. In fact, Defendant has suggested set-off as a plausible remedy in its opposition memorandum which could easily be obtained if Defendants are successful with their counterclaims, since a right to setoff exists when parties have mutual debts. *Soo Line R. Co. v. Escanaba & Lake Superior R. Co.* 840 F.2d 546, 551 (7th Cir. 1988). Therefore, despite that, the entitlement of setoff is a question of fact for judicial determination at a trial on the merits, this Court finds that potentially, a remedy does exist for Defendants' claims, and consequently, the claims are not moot.

In summary, this case is riddled with questions of fact that preclude this Court from granting summary judgment. Accordingly, it is

ORDERED that Plaintiff's motion for summary judgment is DENIED.

DONE and ORDERED.