## SUFFIELD BANK *v.* WILLIAM W. BERMAN ET AL.
## (14779)

PETERS, C. J., BERDON, NORCOTT, KATZ and PALMER, Js.

Argued January 11—decision released March 22, 1994

*Richard P. Weinstein,* for the appellants (named defendant et al.).

*William H. Narwold,* with whom were *Charles D. Ray* and, on the brief, *David D. Legere,* for the appellee (Federal Deposit Insurance Corporation).

KATZ, J. The defendants William W. Berman, James J. Luzzi and Thomas E. Kohanski appeal from the judgments for deficiency after strict foreclosure had been entered against them.[1] The defendants argue that the trial court's judgments must be reversed because the trial court improperly: (1) refused, at the hearing on the motions for deficiency judgment, to allow them to challenge, on a mitigation of damages theory, the accrual of interest on the affidavit of debt; (2) concluded that the Federal Deposit Insurance Corporation (for purposes of this opinion, referred to as the plaintiff), as receiver of the insolvent Suffield Bank (bank), could assert the attorney-client privilege that originally existed between the bank and its attorneys; and (3) accepted into evidence a missing page to the

---

[1] A fourth defendant, William L. Wollenberg is not involved in this appeal.

appraisal after the close of the evidence.[2] We affirm the judgments of the trial court.

The following undisputed facts are pertinent to this appeal. In May, 1987, the bank made two commercial loans to the defendants, secured by two properties located on Farmington Avenue in Farmington.[3] In connection with the loans, the defendants signed promissory notes obligating them to make monthly interest payments to the bank and ultimately to repay the principal.[4] In October, 1989, the defendants defaulted on their monthly interest payments, and thereafter, in April, 1990, the bank filed two identical actions to foreclose the mortgages on the properties securing the notes.

On May 1, 1990, pursuant to Practice Book § 236,[5] the bank filed a written demand for disclosure of

---

[2] At oral argument, the defendants expressly waived their claim that the trial court improperly failed to find that the appraisal process had been tainted by the misconduct of bank officers who influenced the appraiser to decrease his original valuation of the mortgaged property by 25 percent, and that such misconduct was attributable to the plaintiff, thereby giving rise to the equitable defense of unclean hands.

[3] The properties were located at 1051-1055 Farmington Avenue and 1067 Farmington Avenue, and secured a $3.9 million loan and a $500,000 loan, respectively.

[4] Although the promissory notes originally obligated the defendants to repay the principal by May, 1989, the time for payment of the principal was extended, at the request of the defendants, to May 4, 1990.

[5] Practice Book § 236 provides: "DISCLOSURE OF DEFENSE

"In any action to foreclose or discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney for any defendant, the plaintiff may at any time file and serve in accordance with Sec. 120 a written demand that such attorney present to the court, to become a part of the file in such case, a writing signed by him stating whether he has reason to believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. If the defendant fails to disclose a defense within five days of the filing of such demand, the plaintiff may file a written motion that a default be entered against the defendant by reason of the failure of the defendant to disclose a defense. If no disclosure of defense

defense in each case. Subsequently, when the defendants did not file any defenses,[6] the bank filed written motions for default against the defendants in each case for their failure to disclose a defense.[7] On August 28, 1990, after defaults had been entered, the bank filed motions for judgments of strict foreclosure.

On November 9, 1990, the trial court, *Maloney, J.*, held a hearing on the motions.[8] At the hearing, the bank submitted an affidavit as proof of the defendants' debt,[9] to which the defendants objected, claiming that their obligation to pay interest had been discharged in February, 1990, because the bank had failed at that time to accept their codefendant's offer to convey the properties in satisfaction of the secured indebtedness. The trial court overruled the defendants' objection to the affidavit of debt, rendered judgments of strict foreclosure in favor of the bank based on the affidavit of debt,[10] and set law days for December 12, 1990.

has been filed, the court may order judgment upon default to be entered for the plaintiff at the time the motion is heard or thereafter, provided that in either event a separate motion for such judgment has been filed. The motions for default and for judgment upon default may be served and filed simultaneously but shall be separate motions."

[6] The named defendant filed a motion to dismiss for lack of proper service, which he subsequently waived, and a disclosure of defense that the bank's conduct offset its claim against him, which he ultimately withdrew.

[7] See footnote 5.

[8] Prior to the November 9, 1990 hearing, the trial court, *O'Connor, J.*, had held a hearing on the motions for judgment of strict foreclosure, but a mistrial was declared.

[9] Practice Book § 527 provides: "PROOF OF DEBT

"In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the court the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto."

[10] The trial court found the debts on the loans to be $4,512,400.74 and $584,881.96.

The defendants appealed from the trial court's judgments of strict foreclosure, claiming, inter alia, that the trial court improperly had prevented them from contesting the amount of the mortgage debt. On July 30, 1991, the Appellate Court affirmed the decision of the trial court and remanded the cases for the purpose of setting new law days. *Suffield Bank* v. *Berman,* 25 Conn. App. 369, 594 A.2d 493 (1991). The Appellate Court reasoned that the defendants' proffered evidence contesting the amount of the debt went to the issue of their liability for interest, and, therefore, constituted a defense to the debt that was required to be disclosed under Practice Book § 236. Id., 373–74. In the absence of such disclosure, the Appellate Court held that the trial court had properly refused to hear the proffered evidence. Id., 374. We denied the defendants' subsequent petition for certification to appeal the decision of the Appellate Court. *Suffield Bank* v. *Berman,* 220 Conn. 913, 597 A.2d 339–40 (1991).

On September 6, 1991, the trial court entered an order declaring the bank insolvent and appointing the plaintiff as its receiver. On January 6, 1992, the trial court, *Satter, J.,* set new law days of March 6, 1992, and June 16, 1992, for the properties. The properties were not redeemed, the titles were transferred to the plaintiff on March 17, 1992, and June 17, 1992, and, thereafter, the plaintiff filed motions for deficiency judgment in both cases.[11]

---

[11] General Statutes § 49-14 provides: "DEFICIENCY JUDGMENT. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the

The trial court, *Aurigemma, J.*, held a hearing on the motions for deficiency judgment.[12] At the hearing, the defendants objected to the plaintiff's motions for deficiency judgment on the grounds that: (1) their rights to due process had been violated because they had had no opportunity to challenge the amount of the debt at a meaningful time; and (2) the doctrines of unjust enrichment and equitable estoppel required the trial court to deny the motions for deficiency judgment because the bank had acted in bad faith by attempting to influence the appraiser who had performed an appraisal of the mortgaged properties and by failing to take appropriate actions to minimize the amount of the deficiency.

difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"(b) Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee, who shall have and exercise the powers of the court with respect to trial, judgment and appeal in such case.

"(c) Any party to a mortgage foreclosure who has moved for an appraisal of property for the purpose of obtaining a deficiency judgment, but has not been granted a deficiency judgment, or has not received full satisfaction of any deficiency judgment obtained subsequent to the filing of such motion, may make a motion to the court for a deficiency judgment as set forth in subsection (a) of this section. If such motion is made on or before November 1, 1979, such moving party shall be deemed to have complied with all of the requirements of subsection (a) of this section and shall be entitled to the benefit of any deficiency judgment rendered pursuant to said subsection (a).

"(d) Any appeal pending in the supreme court with regard to any deficiency judgment or proceedings relating thereto shall be stayed until a hearing is held pursuant to subsection (a) of this section. Any appellant in such an appeal shall have the right for a period of thirty days after the rendering of judgment pursuant to subsection (a) of this section to amend his appeal. There shall be no stay of such an appeal if no motion has been filed pursuant to this section on or before November 1, 1979."

[12] The hearing took place on four different days: July 10, 1992, August 4, 1992, September 4, 1992, and October 5, 1992. On August 4, 1992, the trial court formally consolidated the two proceedings on the motions for deficiency judgment.

In its memorandum of decision dated January 27, 1993, the trial court rejected the defendants' arguments and thereafter rendered judgments for deficiency after strict foreclosure in the aggregate amount of approximately $2.3 million plus statutory interest.[13] The defendants appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Additional facts will be set forth as necessary.

## I

The defendants first claim that the trial court, in violation of their due process rights, improperly refused to allow them to challenge the accrual of interest on the affidavit of debt, based on the defense of mitigation of damages, at the hearing on the motions for deficiency judgment. A more detailed review of the procedural facts is necessary for the disposition of this claim. As previously stated, on November 9, 1990, the trial court held a hearing on the bank's motions for judgment of strict foreclosure. At that hearing, after noting that there had been no notice of defenses interposed, the bank offered into evidence, pursuant to Practice Book § 527,[14] an affidavit of debt executed by an officer of the bank that set forth the amount of the defendants' debt on the smaller of the two loans in question. The defendants objected to the bank's proffered evidence, stating their intention to challenge the amount of the debt with respect to the accrual of interest. Specifically, the defendants sought to argue that their obligation to pay interest on the debt had been discharged in February, 1990, by virtue of the bank's refusal at that

---

[13] The trial court rendered judgments for deficiency after strict foreclosure in the amounts of $1,820,810.26 plus statutory interest for the larger debt, and $461,797.16 plus statutory interest for the smaller debt.

[14] See footnote 9.

time to accept the offer of one of the equity owners of the mortgaged properties to convey the properties to the bank in satisfaction of the debt.

The bank objected to the evidence proffered by the defendants in support of their proposed defense. The trial court sustained the bank's objection, refused to admit the defendants' proffered evidence and rendered judgments of strict foreclosure in favor of the bank, based on the affidavit of debt. The defendants thereafter appealed.

On appeal from the entry of the judgments of strict foreclosure to the Appellate Court, the defendants claimed that the trial court had improperly prevented them from contesting the amount of the mortgage debt at the hearing. *Suffield Bank* v. *Berman,* supra, 25 Conn. App. 370. In asserting their claim, the defendants relied on *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 439 A.2d 396 (1981). In *Tucker,* this court held that when the defendant had challenged the accuracy of the calculations of principal, interest, taxes and late charges shown on the affidavit of debt presented at a hearing on a motion for judgment of strict foreclosure, the trial court relied improperly on the affidavit of debt to establish the amount of the debt. Id., 374–75, 382. The Appellate Court in *Berman* distinguished *Tucker* by noting that the issue in *Tucker* involved the accuracy of the calculations in the affidavit of debt, whereas, in the case before it, the defendants contested their liability to pay a certain portion of the debt. *Suffield Bank* v. *Berman,* supra, 373–74. The Appellate Court stated: "In short, defenses relating to the mathematical calculation of the debt need not be disclosed but defenses that go to the issue of the defendant's liability for the debt must be disclosed." Id., 374. Accordingly, the Appellate Court affirmed the judgment of the trial court and held that the defendants' failure to disclose a defense in a timely

manner under Practice Book § 236, barred them from later contesting liability at the strict foreclosure hearing. We denied the defendants' petition for certification to appeal.

Notwithstanding the ruling of the Appellate Court in *Berman* and our subsequent denial of certification to appeal the issue, at the hearing on the motions for deficiency judgment, the defendants asserted, inter alia, that the trial court should deny the motions because the defendants had been precluded from challenging the amount of the debt at the prior hearing on the motions for strict foreclosure. In its memoranda of decision on the motions, the trial court noted that the factual basis of the defendants' argument was identical to their unsuccessful claim previously raised in their appeal of the judgments of strict foreclosure. Accordingly, the trial court stated that it was "bound by the holding of the Appellate Court on this issue." We agree with the trial court and, consequently, refuse to reach the defendants' argument.

" 'New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . .' *Wiggin* v. *Federal Stock & Grain Co.*, 77 Conn. 507, 516, 59 A. 607 (1905)." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). Thus, "it is a well-recognized principle of law that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court. *Laurel, Inc.* v. *Commissioner of Transportation*, 173 Conn. 220, 222, 377 A.2d 296 (1977); *Gray* v. *Mossman*, 91 Conn. 430, 434, 99 A. 1062 (1917); 5 Am. Jur. 2d, Appeal and Error § 744." *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 23, 441 A.2d 49 (1981). "The law of the case . . . expresses the practice of judges generally to refuse to reopen what has

been decided and is not a limitation on their power. *Messenger* v. *Anderson,* 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912). . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. *State* v. *Hoffler,* 174 Conn. 452, 462–63, 389 A.2d 1257 (1978); *State* v. *Mariano,* 152 Conn. 85, 91–92, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1965)." (Citation omitted.) *Breen* v. *Phelps,* supra, 99.

On appeal to this court the defendants argue that the trial court, as a court of equity at the hearing on the motions for deficiency judgment, should have utilized its equitable powers to consider the issues of whether it was fair for the bank to have refused the tender of the properties as a compromise for the debt, and whether, thereafter, interest on the debt should have ceased to accrue. The defendants further assert that, until they had been presented with an affidavit of debt at the hearing on the motions for strict foreclosure, they could not have known with certainty whether interest had continued to accrue. Thus, the defendants contend, the only meaningful time at which the trial court could have permitted them to challenge the contents of the affidavit of debt was at that hearing, *after* they had seen the affidavit of debt.

The defendants' argument on appeal to this court, is, in essence, a reargument of the issue of whether the trial court, at the hearing on the motions for strict foreclosure, had properly precluded them from contesting the amount of the debt. Because the Appellate Court in *Berman* had already decided that the trial court had properly precluded the defendants from challenging the amount of the debt, that determination, in the absence of any claim of new or overriding circumstances, became

the law of the case upon its remand. On remand, at the hearing on the motions for deficiency judgment, it was the opinion of the trial court that that issue had been correctly decided in *Berman*. The trial court properly treated that decision as the law of the case, binding on both the parties and the trial court in the subsequent hearing on the motions for deficiency judgment. Thus, the issue that the defendants continued to argue in the trial court, and now pursue in this court, already has been conclusively determined against them and does not warrant further review.

## II

The defendants' second claim is that the trial court improperly concluded that the plaintiff, as receiver of the bank, could assert, on the bank's behalf, the attorney-client privilege that originally existed between the bank and its attorneys. This claim stems from the following additional facts. At the hearing on the motions for deficiency judgment, the plaintiff presented the expert testimony of the bank's appraiser, Edward Heberger, in an effort to meet its burden of proving the market values of the subject properties as of the date title vested in the bank. Heberger testified that in May, 1990, for purposes of strict foreclosure, he had originally estimated the larger subject property's market value[15] at $4.1 million. Heberger also testified that, shortly after having received his appraisal, the bank had asked him to review it to reflect the amount that the bank could actually get for the property at that time. In response to the bank's request, Heberger testified that in July, 1990, he had estimated the

[16] Heberger's appraisal defined market value as "the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. . . ."

property's liquidation value[16] at $3.3 million. Additionally, Heberger testified that the property's market value as of March 17, 1992, the date that title vested, had been $1.9 million.

At the hearing on the motions for deficiency judgment, the defendants subpoenaed two of the bank's former attorneys, Carol Fantozzi and Dean Baker, who had represented the bank in its litigation with the defendants. The defendants examined both attorneys for the express purpose of exposing the bank's efforts to influence Heberger to lower his May, 1990 appraisal. Specifically, the defendants inquired as to what had transpired at a meeting between the bank and its attorneys held sometime after the bank had received Heberger's May, 1990 appraisal, but before it had received his July, 1990 appraisal. At various times during the questioning, both attorneys invoked the attorney-client privilege, claiming that the privilege had survived the bank's insolvency. The defendants objected to each assertion of the privilege,[17] the trial court overruled the objections, and the defendants took exceptions.

The defendants also subpoenaed the plaintiff's attorney, Penny Seaman, requesting "[a]ny and all notes regarding telephone conversations, memos of conferences and correspondence by and between [her] and the appraiser, Edward F. Heberger and Associates, Inc., and the bank in regard to the appraisals of the subject property." Relying upon the attorney-client privilege, Seaman refused to turn over the documents. Once again, the trial court overruled the defendants' objection, upheld Seaman's assertion of the privilege and the defendants took an exception.

---

[16] Heberger testified that liquidation value reflects the price at which the property could sell in the market place at a particular point in time.

[17] The defendants objected to the assertion of the privilege on the ground that the privilege does not apply to the bank as a failed institution.

The defendants argue that the "weight of authority" precludes the plaintiff, as receiver for the bank, from properly claiming the protection of the attorney-client privilege. The defendants further argue that as a result of the plaintiff's assertion of the privilege, the defendants were "unable to fully develop the evidence of the bank's misconduct regarding the appraisal process." Accordingly, the defendants urge us to conclude that the trial court improperly permitted the plaintiff to assert the attorney-client privilege, thereby warranting reversal. Because we hold that the bank's attorney-client privilege survives the plaintiff's receivership of that failed institution, we reject the defendants' claim.

"The [Federal Deposit Insurance Corporation (FDIC)] was established by Congress in order to promote stability and confidence in the nation's banking systems. *Gunter* v. *Hutcheson,* 674 F.2d 862 (11th Cir. 1982), cert. denied, 459 U.S. 826, 103 S. Ct. 60, 74 L. Ed. 2d 63, reh. denied, 459 U.S. 1059, 103 S. Ct. 477, 74 L. Ed. 2d 624 (1982); *First State Bank of Hudson County* v. *United States,* 599 F.2d 558 (3d Cir. 1979). This purpose is achieved in two ways, first by providing insurance for payment to depositors of banks in case of failure, and second by providing an alternate method for handling failed banks by keeping the bank's assets and deposits in tact. In the first instance, the FDIC in its *corporate* capacity is authorized . . . to act as insurer of the deposits of a bank. In the second instance, the FDIC . . . acts in a separate capacity as *receiver* of the insolvent bank." (Emphasis added.) *Federal Deposit Ins. Corp.* v. *Berry,* 659 F. Sup. 1475, 1481 (E.D. Tenn. 1987).

The powers and duties of the FDIC are governed by the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq., as amended by the Financial Institutions Reform Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, § 101 et seq. *Federal Deposit Ins. Corp.*

v. *Cherry, Bekaert & Holland,* 129 F.R.D. 188, 191 (M.D. Fla. 1989); *Resolution Trust Corp.* v. *Plumlee,* 745 F. Sup. 1462, 1464 (E.D. Ark. 1990). In particular, the powers and duties of the FDIC as a receiver of insured depository institutions are specified in 12 U.S.C. § 1821 (d). Section 1821 (d) (2) (A) provides that the FDIC "shall, as . . . receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution . . . ."

Although we have not previously addressed the issue of whether the FDIC as receiver has the right to assert the attorney-client privilege on behalf of the failed institution, federal district courts have consistently held that the "FDIC-*Receiver* [can] assert the attorney-client privilege of the failed institution . . . ."[18] *Federal*

---

[18] There is, however, a split of authority in the lower federal courts concerning whether the FDIC, acting in its *corporate* capacity, has the right to assert the attorney-client privilege of a failed bank by virtue of its purchase of certain assets of the bank from the FDIC acting as *receiver*. Compare *Federal Deposit Ins. Corp.* v. *Amundson,* 682 F. Sup. 981, 986–87 (D. Minn. 1988), and *Federal Deposit Ins. Corp.* v. *McAtee,* 124 F.R.D. 662, 664 (D. Kan. 1988), with *Federal Deposit Ins. Corp.* v. *Cherry, Bekaert & Holland,* supra, 129 F.R.D. 191, 192–93, *Federal Deposit Ins. Corp.* v. *Berry,* United States District Court, E.D. Tenn., Docket No. 1-85-62 (June 3, 1985), and *Federal Deposit Ins. Corp.* v. *Ellis,* United States District Court, N.D. Ala., Docket No. CV84-PT-2560-M (Dec. 19, 1985). At least one lower federal court has held that the enactment of the Financial Institutions Reform Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, § 101 et seq., amending, inter alia, the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq., supports the position that the FDIC, acting in its corporate capacity, "is entitled to assert the 'rights, titles, powers, and privileges' of [the FDIC acting as receiver], *including the attorney-client privilege.*" (Emphasis added.) *Federal Deposit Ins. Corp.* v. *Cherry, Bekaert & Holland,* supra, 191; see also *Resolution Trust Corp.* v. *Miramon,* United States District Court, E.D. La., Docket No. 92-2672 (Nov. 15, 1993).

In support of their claim that, under the "weight of authority," the FDIC, as receiver for the failed bank, cannot claim the attorney-client privilege, the defendants cite four cases: *Federal Deposit Ins. Corp.* v. *Amundson,*

*Deposit Ins. Corp.* v. *Cherry, Bekaert & Holland,* supra, 129 F.R.D. 191, 192–93; see also *Federal Deposit Ins. Corp.* v. *Amundson,* 682 F. Sup. 981, 986–87 (D. Minn. 1988); *Federal Deposit Ins. Corp.* v. *McAtee,* 124 F.R.D. 662, 664 (D. Kan. 1988); *Odmark* v. *Westside Bankcorporation, Inc.,* 636 F. Sup. 552, 554 (W.D. Wash. 1986) (dealing with Federal Savings and Loan Insurance Corporation as receiver); *Federal Deposit Ins. Corp.* v. *Berry,* United States District Court, E.D. Tenn., Docket No. 1-85-62 (June 3, 1985); *Federal Deposit Ins. Corp.* v. *Ellis,* United States District Court, N.D. Ala., Docket No. CV84-PT-2560-M (Dec. 19, 1985). We conclude, therefore, that we should follow the federal precedents that allow the FDIC as receiver to assert the attorney-client privilege of the failed institution. Accordingly, the trial court properly permitted the plaintiff, as receiver of the failed bank, to assert the attorney-client privilege of that defunct entity.

## III

The defendants' final claim is that, after evidence at the hearing on the motions for deficiency judgment had

supra, 682 F. Sup. 987; *Cadillac Ins. Co.* v. *American National Bank,* United States District Court, N.D. Ill., Docket No. 89-C3267 (Nov. 27, 1991); *Bagdan* v. *Beck,* 140 F.R.D. 660, 667 (D. N.J. 1991); and *Federal Deposit Ins. Corp.* v. *McAtee,* supra, 124 F.R.D. 664. Two of those cases, *Amundson* and *McAtee,* dealt with the FDIC in its *corporate* capacity as an assignee or purchaser of assets, not in its capacity as *receiver.* Those cases held that the FDIC, in its corporate capacity, did not control the attorney-client privilege for communications with the former bank's attorneys. *Federal Deposit Ins. Corp.* v. *McAtee,* supra, 664; *Federal Deposit Ins. Corp.* v. *Amundson,* supra, 987. Furthermore, the cases support the proposition that the FDIC as *receiver* can assert the privilege. See *Federal Deposit Ins. Corp.* v. *McAtee,* supra, 664; *Federal Deposit Ins. Corp.* v. *Amundson,* supra, 987. The remaining two cases, *Bagdan* and *Cadillac Ins. Co.* did not involve the FDIC. Furthermore, to the extent that those two cases did discuss FDIC law, they relied on cases such as *Amundson,* dealing with the FDIC in its corporate capacity. *Cadillac Ins. Co.* v. *American National Bank,* supra; *Bagdan* v. *Beck,* supra, 667. Consequently, the cases are inapposite.

concluded, the trial court improperly accepted into evidence a missing page to the appraisal. This claim stems from the fact that the copy of the appraisal originally filed by the plaintiff and admitted into evidence at the hearing omitted the certification page. The first time the defendants advised either the trial court or the plaintiff of the missing page was immediately following the close of evidence,[19] when they asserted that the appraisal was "legally insufficient" because it failed to contain the certification page required by certain state regulations.[20] Thereafter, the trial court permitted the plaintiff to supplement the exhibit with a copy of the missing page.

---

[19] The defendants deliberately waited for the close of the evidence to raise this claim, as is evidenced by the October 5, 1992 transcript:

"[The Defendants' Counsel]: I have no further evidence, Your Honor, but I do have a legal argument, one additional one; it's brief. I'll do it if all the evidence is complete. I don't know.

"The Court: Is all the evidence completed?

"[The Plaintiff's Counsel]: We are complete with our witnesses, Your Honor. I don't know if Mr. Reeve is.

"Mr. Reeve: I don't have any further evidence, Your Honor."

[20] The defendants did not cite to a specific regulation at the hearing or in their brief to this court. The plaintiff, however, in its brief to this court made reference to Section 20-328-29 of the Regulations of Connecticut State Agencies, and, at oral argument, the defendants agreed that subsection (a) 11 of that regulation was applicable.

Section § 20-328-29 provides: "CONTENTS OF APPRAISALS

"(a) An appraisal shall include, but not be limited to, the following:

"(1) the identity of the real estate being appraised;

"(2) the identity of the real property interest being appraised;

"(3) the purpose of the appraisal;

"(4) the definition of the value to be estimated;

"(5) the effective date of the appraisal and the date of the report;

"(6) the scope of the appraisal;

"(7) any assumptions or conditions that affect the analyses, opinions and conclusions of the appraisal;

"(8) where applicable, the cost, income and comparable evaluation approaches, including adjustment sheets;

"(9) the appraiser's opinion of the highest and best use of the real estate when such opinion is necessary and applicable;

"(10) the name, either printed or typed, and the type of license and license number for each appraiser signing the appraisal; and

The defendants argue that the trial court's admission of the missing page after the evidence had concluded, without requiring the plaintiff to show "inadvertence or mistake," or without declaring the case "reopened," was improper and requires reversal under our case law. We disagree.

" 'Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. *State* v. *Levy,* 103 Conn. 138, 145, [130 A. 96 (1925)]; *State* v. *Chapman,* 103 Conn. 453, 479, [130 A. 899 (1925)]; *King* v. *Spencer,* 115 Conn. 201, 203, [161 A. 103 (1932)]; *State* v. *Swift,* 125 Conn. 399, 405, [6 A.2d 359 (1939)].' *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10

"(11) a signed certification meeting the requirements of subsection (b) of this section.

"(b) Every written real estate appraisal shall contain a certification in substantially the following form: I (We) hereby certify that to the best of my (our) knowledge and belief:

"(1) the statements of fact contained in this report are true and correct;

"(2) the reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and are my (our) personal, unbiased professional analyses, opinions and conclusions;

"(3) I (we) have no undisclosed present or prospective interest in the property that is the subject of this report, and I (we) have no undisclosed personal interest or bias with respect to the parties involved;

"(4) my (our) compensation is not contingent on an action or event resulting from the analyses, opinions or conclusions in, or in the use of, this report;

"(5) the preparation of the report and analyses, opinions and conclusions were developed in conformity with the Uniform Standards of Professional Appraisal Practice;

"(6) I (we) have (or have not) made a personal inspection of the property that is the subject of this report; and

"(7) no one, including a trainee, provided significant professional assistance to the person(s) signing this report unless stated.

"(c) To the extent that it is both possible and appropriate, each oral real estate report (including expert testimony) shall address the substantive matters set forth in section 20-328-29 (a).

"(d) When an appraisal is undertaken which departs from accepted appraisal criteria, the reasons for such departure and the manner in which it differs from such criteria shall be included in the appraisal."

A.2d 689 [1940]. In the ordinary situation where 'a trial court feels that, *by inadvertence or mistake*, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided.' " (Emphasis added.) *State* v. *Holmquist,* 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977).

Our review of the record reveals that, despite the defendants' claim to the contrary, when the defendants raised the issue of the missing page, the plaintiff made a clear and uncontested showing of inadvertence or mistake to the trial court.[21] " 'In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 [1972]. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done.' *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 [1975]." *State* v. *Holmquist,* supra, 173 Conn. 152–53. It is reasonable to assume that, in deciding to admit the missing page after the close of evidence, the trial court accepted the plaintiff's uncontested statement that it had omitted the page by mistake. Accordingly, we can conclude neither that the trial court abused its discretion, nor that any injustice has been done.

The defendants also assert that under *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* 213 Conn. 486, 493–94, 569 A.2d 32 (1990), the trial court improperly failed to reopen the case after accepting the missing

---

[21] The plaintiff's counsel stated: "I can only believe that there was an error in copying. I suspect it's an error on the part of my office. . . . What we're missing is the first page [of the certification], which would indicate to me it's a problem of copying."

page into evidence. We disagree. In *Season-All Industries, Inc.*, we held that the trial court abused its discretion in permitting the plaintiff to offer testimony after the close of evidence and during its rebuttal of the defendants' counterclaim, without reopening the case. Id., 491–92. In so holding, we declined to conclude that the trial court implicitly had reopened the case as to the individual defendant, because that defendant had received no "notice" that the trial court was admitting additional evidence concerning his individual liability. Id., 494. We stated that although "the trial court . . . has the discretion to permit additional evidence to be introduced before a case is decided . . . to do so, it must reopen the case. This is especially important in an action involving multiple defendants to ensure that an individual defendant has notice that the trial court may utilize any new evidence against him [or her]. To hold otherwise would be effectively to deprive such a defendant of the opportunity to cross-examine the additional witness and/or to rebut the additional testimony." (Citations omitted.) Id., 493–94.

Unlike *Season-All Industries, Inc.*, the present case does not present the situation of a defendant who was not on notice of the need to rebut additional testimony. To the contrary, in light of the colloquy that occurred among all the parties in open court immediately following the close of evidence on October 5, 1992, the defendants in this case were on notice that the trial court intended to accept the missing page into evidence and that the trial court thereafter might use the evidence against them. Accordingly, we conclude that although the trial court did not explicitly reopen the case, it did so implicitly and therefore did not abuse its discretion in admitting the missing page.

The defendants assert that, without the certification page, the validity, authenticity and accuracy of Heberger's appraisal is open to question. Thus, according to

the defendants, the fact that the page was missing provided them with additional arguments that they were precluded from making regarding the insufficiency of the plaintiff's proof. For several reasons we view the defendants' claim as disingenuous. First, the defendants themselves never expressly moved to reopen the case and never attempted to make an offer of proof regarding their asserted prejudice. They have similarly failed to support their claim of prejudice before this court. Moreover, the defendants have never disputed that the original appraisal document contained the missing page and, therefore, comprised a complete certification of the appraisal. Finally, the defendants had had four days of hearings, over the course of several months, during which to question Heberger about the missing page, but declined to do so. Rather, they chose to wait until after the close of evidence before deciding to alert the trial court of the omission. This court has expressly decried such "trial by ambush" techniques in the past; see, e.g., *State* v. *Dennison,* 220 Conn. 652, 657, 600 A.2d 1343 (1991); *State* v. *King,* 216 Conn. 585, 590, 583 A.2d 896 (1990); and we decline to permit them here. Accordingly, we reject the defendants' argument that the trial court improperly accepted into evidence the missing page after the evidence had concluded.

The judgment is affirmed.

In this opinion the other justices concurred.