[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO STRIKE #119
The plaintiffs, Joseph Casillo, Frederick M. Johnson and John M. Heath, Jr., have filed this five count complaint which alleges CUTPA violations, quiet title, misappropriation, violations of Connecticut trademark law and violation of the Connecticut Anti-Trust Act, against the defendants, Micropatent, Opus Publications, Inc., Peter Tracy, Gregory R. Veilleux and William J. Dufault. The complaint alleges that the plaintiffs were all employed at Micropatent essentially as computer programmers and that they were "terminated, separated, expelled, forced out, or fired. . . ." While employed at Micropatent, the plaintiffs claim that they jointly invented a method for placement of a self-adhesive label onto compact discs which has been embodied in U.S. Patent No. 5543001 (`001 patent). The `001 patent names the plaintiffs, Veilleux and Dufault as co-inventors; however the plaintiffs allege that neither Veilleux nor Dufault participated CT Page 7397 in the inventive process and therefore do not have an ownership interest in the patent. The plaintiffs claim that on April 3, 1995, they, along with the defendants Veilleux and Dufault, executed an assignment of the patent to Micropatent. They allege that Micropatent, Opus Publications, Inc. and Peter H. Tracy have asserted an ownership interest in the `001 patent and have merchandised the product developed by the plaintiffs. Furthermore, the plaintiffs assert that the defendants also utilize the name "NEATO" in merchandising the invention and product. They claim that the defendants have obtained great sums of money due to their merchandising efforts and that the plaintiffs have not received any monies from the defendants. The plaintiffs claim they are entitled to receive the money the defendants have reaped through the unauthorized use of their invention.
In count one, the plaintiffs assert a CUTPA violation based upon conversion and non-compliance with General Statutes § 35-1. Under count two, the plaintiffs seek to quiet title to the `001 patent. In count three, the plaintiffs allege conversion and seek injunctive relief. In count four, the plaintiffs allege that the defendants' use of the mark "NEATO" violates Connecticut's trademark and service mark laws. In count five, the plaintiffs claim that the defendants' actions constitute violations of the Connecticut Anti-Trust Act.
The defendants filed a motion to dismiss the complaint based on an alleged lack of subject matter jurisdiction. The court,Fracasse, J., denied the defendants' motion and found that the plaintiffs' causes of action were within the court's jurisdiction. Following the filing of a request to revise, the plaintiffs submitted a revised pleading which consisted of only revised versions of the objectionable paragraphs and not a completely amended complaint. The court therefore considers the unrevised portions of the complaint as originally submitted.
The defendants now move to strike all five counts of the complaint. As to count one, the defendants contend that the plaintiffs have failed to allege a valid CUTPA claim. They assert that the plaintiffs cannot rely on General Statutes § 35-1, because that statute does not create a private cause of action, because the plaintiffs have not alleged an ascertainable loss due to the alleged violation of § 35-1, and because the plaintiffs are not within the class of persons protected by § 35-1. As to counts two and three, Micropatent contends that it is at least a CT Page 7398 co-owner of the `001 patent and therefore entitled to commercialize it, so that the plaintiffs cannot maintain their claims for conversion and to quiet title. As to count four, the defendants assert that the plaintiffs have failed to plead trademark registration or a likelihood of confusion. As to count five, the defendants argue that the plaintiffs have failed to plead the essential elements of the Connecticut Antitrust Act. Additionally, the defendants assert generally that the entire complaint should be stricken because the court lacks subject matter jurisdiction.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . ." (Citations omitted; internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825-26,676 A.2d 357 (1996).
Count One
As to count one, the defendants maintain that since Veilleux and Dufault's status as co-inventors or their subsequent assignment to Micropatent are at issue, Micropatent may freely commercialize the `001 patent and plaintiffs therefore may not base their CUTPA claim upon conversion. The defendants also argue that the plaintiffs may not base their CUTPA claim upon the alleged violation of § 35-1, because the plaintiffs have not alleged a nexus between the defendants' claimed failure to register and the plaintiffs' alleged injury. Furthermore, the defendants assert that the plaintiffs have failed to establish that they are among the class of persons in which § 35-1 and CUTPA were designed to protect. The plaintiffs maintain that their claim involves the defendants' unfair and deceptive trade practices, and, as a result, the plaintiffs have lost rights to the `001 patent and lost profits that the defendants have reaped in merchandising the `001 patent.
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without CT Page 7399 necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . [A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. . . ." (Citations omitted; internal quotation marks omitted.) Willow Springs CondominiumAssn. Inc. v. Seventh BRT Development Corp. , 245 Conn. 1, 43,717 A.2d 77 (1998).
In State v. Cardwell, Superior Court, judicial district of Hartford at Hartford, Docket No. 556135 (July 31, 1997, Sullivan,J.) (20 Conn. L. Rptr. 292), aff'd in part, rev'd in part,246 Conn. 721, 718 A.2d 954 (1998), the court held that the defendant's violation of General Statutes § 35-1 was a per se violation of CUTPA and assessed penalties against the defendant. On appeal to the Supreme Court, the defendant only disputed the trial court's assessment of penalties and did not contest the court's finding that it had violated § 35-1 and therefore violated CUTPA. In affirming the trial court's decision regarding the §35-1 violation, the Supreme Court held: "Nowhere does [§ 42-110o
(b)] require the court to consider . . . whether anyone was actually harmed by the unfair or deceptive trade practice." Statev. Cardwell, supra, 246 Conn. 745. In 1800 Investors v. FairfieldLumber, Superior Court, judicial district of Stamford/Norfolk at Stamford, Docket No. 113507 (July 30, 1991, Ryan, J.) (6 C.S.C.R. 769), the court found that although § 35-1 does not itself create a private cause of action, it can be a basis of a cause of action if facts necessary to support a CUTPA claim are pleaded.
In the present case, the plaintiffs allege a CUTPA violation[1] based upon an alleged violation of § 35-1. "In order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that as a result of this act, the plaintiff suffered an injury. The language `as a result of' requires a showing that the prohibited CT Page 7400 act was the proximate cause of a harm to the plaintiff. . . ."Abrahams v. Young Rubicam. Inc., 240 Conn. 300, 306,692 A.2d 709 (1997). In their complaint, the plaintiffs allege that the defendants have not complied with General Statutes § 35-1 and as a result have violated CUTPA. The plaintiffs do not, however, allege any injury as a result of the defendants' alleged violation of § 35-1. The plaintiffs must allege some injury as aresult of the defendants' failure to comply with § 35-1 in order to support their CUTPA claim based on the alleged violation of that statute. See Perez v. Ellis, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 552958 (April 16, 1996, Spada, J.); 1800 Investors v. Fairfield Lumber, supra, 6 C.S.C.R. 770. This failure is fatal to the plaintiffs' CUTPA count, and the defendants' motion to strike count one is therefore granted.
Count Two
The defendants argue that in order for the court to grant relief in the plaintiffs' action to quiet title, it must determine Micropatent's basis of ownership in the `001 patent. The defendants assert that Micropatent is a valid owner due to Veilleux and Dufault's assignment. They maintain that any challenge to Micropatent's ownership requires a review of Veilleux and Dufault's inventorship status and that this court lacks jurisdiction to determine inventorship. Furthermore, the defendants assert that the court, Fracasse, J., has ruled that this action does not require a determination of inventorship based upon the pleadings. Therefore, they maintain that since Veilleux and Dufault's assignment is valid, the plaintiffs' assignment to Micropatent is also valid.
In opposition, the plaintiffs set forth an extensive argument regarding Veilleux and Dufault's ability to assign their individual interests in the `001 patent, but their principal contention is that the assignment is invalid due to a lack of consideration. General Statutes § 47-31 provides, in pertinent part: "(a) An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it . . . (b) The complaint in such action shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and shall name the person or persons who may claim the adverse estate or interest . . ." CT Page 7401
"A patent is considered personal property, the situs of which follows the person who is the owner. . . ." (Citations omitted.)Fletcher-Terry Co. v. Grzeika, 1 Conn. App. 422, 427,473 A.2d 1227 (1984); see also Hockerson-Halberstadt. Inc. v. Nike. Inc.,779 F. Sup. 49, 51 (E.D. La. 1991) (the law of the situs of the assignment controls the question of the validity of the assignment). See, also, 35 U.S.C. § 261, which provides, in pertinent part: "Subject to the provisions of this title, patents shall have the attributes of personal property. . . ." "Where a patent is issued to two or more persons, they become `co-owners' or `owners in common' or `cotenants' or `tenants in common' of the right and property secured by the patent." (Internal quotation marks omitted.) Gibbs v. Emerson Electric Mfg. Co.,29 F. Sup. 810, 812 (W.D. Mo. 1939). "The statute [General Statutes § 47-31] requires that the complaint in such an action describe the property in question, state The plaintiff's claim, interest or title and the manner in which the plaintiff acquired the interest, title or claim, and it must also name the person or persons who may claim the adverse interest or estate. . . ." (Citation omitted.) Koennicke v. Maiorano, 43 Conn. App. 1, 9,682 A.2d 1046 (1996).
The plaintiffs claim an interest in the `001 patent and allege that the defendants have claimed an adverse interest in the `001 patent. They allege that they are the inventors of the process claimed in `001 patent, are therefore the sole owners of the `001 patent, and that they have not validly assigned the `001 patent to Micropatent.
The plaintiffs also allege that the purported assignment to Micropatent is invalid due to lack of consideration. ("[A] party [may] void a contract on the ground of lack of consideration despite the recital within the contract of the consideration allegedly received. A recitation of consideration received does not prevent proof that there was no consideration. . . . It is simply prima facie evidence, shifting the burden of proof to the party disputing the consideration. . . ." (Citations omitted.)TIE Communications, Inc. v. Kopp, 218 Conn. 281, 291-92,589 A.2d 329 (1991). Therefore, based on the plaintiffs' allegations, the plaintiffs have made a legally sufficient quiet title claim under count two.
The defendants assert in their supporting memorandum that the court must make a determination of inventorship because the CT Page 7402 plaintiffs have alleged that Veilleux and Dufault did not actually invent the process of the `001 patent. The court,Fracasse, J., has ruled that it may render a decision regarding ownership of the `001 patent without deciding whether Veilleux and Dufault are the actual inventors. (Memorandum of Decision Re: Defendants' Motion to Dismiss #106, p. 8.) "The law of the case . . . expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . ." (Citation omitted; internal quotation marks omitted.) Suffield Bank v. Berman,228 Conn. 766, 774-75, 639 A.2d 1033 (1994). The defendants have not raised any new or overriding circumstance regarding the issue of inventorship, and the court may therefore may render a decision regarding ownership in this case without a determination of inventorship. The motion to strike this count is denied.
Count Three
In support of their motion to strike count three, the defendants assert that the plaintiffs have failed to allege a prima facie case sounding in conversion, because the plaintiffs cannot allege that the `001 patent exclusively belongs to them due to Veilleux and Dufault's status as co-inventors and their subsequent assignment to Micropatent. They maintain that the court must resolve inventorship in order to resolve the plaintiffs' claim for conversion.
In opposition, the plaintiffs maintain that they have pleaded the necessary elements of conversion, that the defendants have actually admitted that sufficient allegations have been made, and that the court, Fracasse, J., has found their allegations sufficient to support a claim for conversion.
"Conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights . . ." (Citation omitted.)Polivy v. Air One, Inc., 46 Conn. App. 573, 577, 700 A.2d 71, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997).
In count three of the complaint, the plaintiffs reallege and incorporate the allegations in count one along with additional CT Page 7403 claims regarding misappropriation of trade secrets. The defendants have moved to strike this count based solely on their contesting the plaintiffs' conversion claim. The plaintiffs allege that they are the true owners of the `001 patent and the assignment in question is invalid due to lack of consideration. The plaintiffs further claim that the defendants have claimed ownership in the `001 patent, merchandised it, and, as a result, have amassed great sums of money which rightfully belong to the plaintiffs and which they have never received because of the defendants' unauthorized use. Construing these allegations in the light most favorable to the plaintiffs, the complaint sets forth allegations sufficient to support a conversion claim.
Count Four
As to count four, the defendants argue that in order to maintain a claim under the Connecticut Trademark Act, the plaintiffs must allege that they have registered the mark in question and that the defendants' use is likely to cause confusion. General Statutes § 35-11i. The plaintiffs maintain that their claim involves the defendants' violation of General Statutes §§ 35-11a et seq. of the Connecticut Trademark Act, and, therefore, they have not specifically pleaded the remedies available under § 35-11i (b). The plaintiffs assert that § 35-11k
clearly states that common law rights are not affected by the provisions of the Connecticut Trademark Act. They contend that the defendants' use of the trademark "NEATO" indicates a false source of the goods, since the defendants are not the rightful owners of the `001 patent. They also assert that the defendants may be found liable under § 35-11j, fraudulent registration, and the court may order the cancellation of a trademark pursuant to § 35-11g (4).
The defendants respond that even if the court considers the plaintiffs' allegations as an action pursuant to § 35-11j or as a common law trademark claim, the plaintiffs have not sufficiency pleaded a cause of action under count four.
"Common law trademarks, and the right to their exclusive use, are, of course, to be classed among property rights. . . ." (Internal quotation marks omitted.) Republic Oil Co. v. Levy, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 538757 (February 27, 1995, Corradino, J.) (13 Conn. L. Rptr. 530). "To prevail on a statutory or common law trademark infringement claim a plaintiff must demonstrate an CT Page 7404 infringement of this limited property right. He must establish that the symbols in which this property is asserted are valid, legally protectible trademarks; that they are owned by [the] plaintiff; and that [the] defendant's subsequent use of similar marks is likely to create confusion as to origin of the goods. See Estate of Presley v. Russen, 513 F. Sup. 1339, 1362 (D.N.J. 1981), and cases cited therein." Pirone v. MacMillan,894 F.2d 579, 581-82 (2d Cir. 1990). "[Trademarks] can be alienated like any piece of property . . . however, unlike patents and copyrights, [they] have no existence independent of the article, service or business in connection with which the mark is used. . . ." (Citation omitted; internal quotation marks omitted.) Estate of Presley v. Russen, supra, 513 F. Sup. 1365. In Republic Oil Co. v. Levy, the court struck the plaintiff's common law action for trademark infringement due to the plaintiff's failure to allege that it owns the trademark or that it has an exclusive right to distribute the product.
The defendants argue that the plaintiffs have not alleged that they: 1) own the trademark in question; 2) have used the mark "NEATO" prior to the defendants' use; or 3) have an exclusive right to use the method under the `001 patent. They therefore contend that the plaintiffs have failed to state a common law trademark claim. The plaintiffs in fact make two references to the trademark in question under count four. In ¶ 19, they allege that the defendants have used the name "NEATO" in merchandising the `001 patent. Although the plaintiffs claim they are the true owners of the `001 patent, however, they do not make a clear claim of ownership of the "NEATO" mark in that paragraph. In the revised ¶ 34, the plaintiffs allege that the defendants' use of the mark "NEATO" violates §§ 35-11a et seq. because the defendants are not the true source of the goods. The plaintiffs allege that they are the source of the goods and that the defendants' use of the mark is improper. The plaintiffs do not, however, allege that they have an exclusive right to use the `001 patent nor do their allegations regarding the validity of the assignment demonstrate that they have an exclusive right to the `001 patent, because Veilleux and Dufault are listed as co-inventors on the issued patent. "Where a patent is issued to two or more persons, they become `co-owners' or `owners in common' or `cotenants' or `tenants in common' of the right and property secured by the patent." Gibbs v. Emerson Electric Mfg.Co., supra, 29 F. Sup. 812. Although the plaintiffs allege that Veilleux and Dufault are not true inventors, the court must accept the patent as valid: "Patent issuance creates a CT Page 7405 presumption that the named inventors are the true and only inventors. . . ." (Citation omitted.) Ethicon. Inc. v. UnitedStates Surgical Corp. , 135 F.3d 1456, 1460 (Fed. Cir.), cert. denied, ___ U.S. ___, 119 S.Ct. 278, 142 L.Ed.2d 229 (1998). Therefore, the plaintiffs have not made sufficient allegations to support a common law trademark claim, because they have failed to allege ownership or prior use of the "NEATO" mark, and because they have not alleged an exclusive right to use the `001 patent.
In their opposing memorandum, the plaintiffs assert that they may have a cause of action pursuant to General Statutes § 35-11j, fraudulent registration. General Statutes 35-11j provides: "Any person who, for himself or on behalf of any other person, procures the filing or registration of any mark in the office of the Secretary of the State under the provisions of this chapter, by knowingly making any false or fraudulent representation or declaration, orally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of the party injured thereby in any court of competent jurisdiction." No Connecticut court decisions address a claim brought pursuant to § 35-11j, although federal law includes an analogous statute, 15 U.S.C. § 1120, which provides: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."
"Section 38 [15 U.S.C. § 1120] permits suits not only by a competitor or a member of a purely commercial class, but by any person who is injured by the registration of a trademark by virtue of a false or fraudulent statement or declaration."Jackson v. Lynley Designs, Inc., 729 F. Sup. 498, 500 (E.D. La. 1990). "[M]isstatements in a registration application provide a basis for cancelling the registration only if the misstatements (1) were made with knowledge of their falsity and (2) were material to the determination to grant the application. . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Baker v. Parris, 777 F. Sup. 299, 305 (S.D.N.Y. 1991).
In the present case, the plaintiffs have not made any factual allegations regarding particular false or fraudulent statements made by the defendants in the procurement of the registration of "NEATO" with the Secretary of State. Without some clear statement CT Page 7406 of the misstatements allegedly made to obtain the registration, the plaintiffs have not provided factual allegations sufficient to state a claim pursuant to § 35-11j.
Based upon the foregoing, the plaintiffs have failed to allege sufficient allegations to support a claim under any of the causes of action available under the Connecticut Trademark Act, including any common law trademark action. The defendants' motion to strike count four is therefore granted.
Count Five
The defendants maintain that the plaintiffs have failed to make any of the following kinds of allegations in support of their antitrust claim: 1) specific allegations with respect to which parties have contracted in an attempt to monopolize; 2) allegations that the defendants entered into a contract with the specific intent to achieve an unlawful monopoly; 3) allegations that adequately define the relevant market as required under General Statutes § 35-27; 4) any alleged public injury; and 5) allegations that the plaintiffs were competitors, or that they had taken substantial and demonstrable steps to become a competitor. They therefore contend that the fifth count should be stricken. The defendants argue further that the plaintiffs have failed to allege a violation of any specific section of the Connecticut Anti-Trust Act.
In opposition, the plaintiffs reassert their arguments related to their conversion claim and assert that the defendants acted in concert to create a monopoly based upon the proprietary rights of the plaintiff. They maintain that "the defendants have contracted, combined or conspired amongst themselves to preclude the plaintiffs from using the plaintiffs' property," and they assert that the defendants' acts demonstrate a specific intent to control prices and destroy competition.
"The Connecticut Antitrust Act was intentionally patterned after the antitrust law of the federal government. Therefore, our construction of the Connecticut Antitrust Act is aided by reference to the judicial opinions interpreting the federal antitrust statutes. . . . Accordingly, we follow federal precedent when we interpret the act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently . . ." (Citations omitted; internal quotation marks omitted.) L'Altrella v. Weight WatchersCT Page 7407International, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334348 (March 16, 1998, Melville, J.)[2]
"General Statutes § 35-27 is patterned after § 2 of the Sherman Act, 15 U.S.C. § 2. It enumerates three separate offenses: (1) contract, combination or conspiracy to monopolize; (2) monopolization; and (3) attempt to monopolize. The first offense requires a plurality of actors. . . ." (Citation omitted; internal quotation marks omitted.) Automatic Cigarette Sales.Inc. v. Wilson, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 071766 (January 23, 1997, Pickett, S. T. R.).
"A patent by its very nature is affected with a public interest . . . [It] is an exception to the general rule against monopolies and to the right to access to a free and open market . . ." (Citation omitted; internal quotation marks omitted.) Walker Process Equip. v. Food Mach. Chem. Corp. ,382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).
Under count five, the plaintiffs have realleged and incorporated by reference count four, ¶¶ 1 through 34, and they claim that the allegations of those paragraphs constitute violations of the Connecticut Anti-Trust Act. They argue that the purported assignment which the defendants use to support their claim to the plaintiffs' invention is an attempt by the defendants to monopolize the use of their product. The plaintiffs have alleged that the defendants have misappropriated the plaintiffs' proprietary product, obtained a patent and exploited the patented process by trick and artifice. Viewing the complaint in the light most favorable to the plaintiffs, this court concludes that the plaintiffs have at least made sufficient allegations to support the claim that the defendants have obtained the patent through fraud,[3] and such an act may create a basis for a § 2 attempted monopolization claim.
"The Supreme Court has decided that the maintenance and enforcement of a patent obtained by fraud on the PTO [Patent and Trademark Office] may be the basis of a § 2 attempted monopolization claim. . . . In Walker Process, the Court also stated that proof of fraud on the PTO is insufficient to survive a motion to dismiss; rather, all of the elements of a § 2 claim must be established. . . . In order to establish a § 2 attempted monopolization claim, a plaintiff must prove (1) that the defendant engaged in predatory or anticompetitive conduct with CT Page 7408 (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. . . . In order to determine whether there is a dangerous probability of achieving monopoly power, it is necessary for the court to define the relevant product market. . . . Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market. Because a relevant market includes all products which are reasonably interchangeable [p]laintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal. . . ." (Citations omitted.) B.V. Optische Industries De Oude Delft v.Hologic, 909 F. Sup. 162, 171 (S.D.N.Y. 1995).
In B.V. Optische Industries De Oude Delft v. Hologic, the plaintiff brought, inter alia, an antitrust action for attempted monopolization under § 2 of the Sherman Act. The defendant moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6)[4] for failure to state a claim for which relief can be granted on the grounds that the plaintiff failed to define the relevant market. The plaintiff simply stated that the relevant market was chest equalization radiography and that no persons other than the parties thereto had the capacity to provide chest equalization radiography equipment in the United States. The court found the plaintiffs attempt to the define the market inadequate, because the pleadings did not refer to any reasonable interchangeable alternatives nor explain their narrow definition of the relevant market. B.V. Optische Industries De Oude Delft v. Hologic, supra,909 F. Sup. 172. Furthermore, the court found that the plaintiff attempted to support its antitrust claim by asserting that the defendants were merely trying to block its access to the market by obtaining fraudulent patents. Id. "[I]t is obvious that merely obtaining a patent for a product does create a product market for antitrust purposes. . . ." (Citations omitted.) Id. The court held that the plaintiff had inadequately defined the relevant market and granted the defendant's motion to dismiss the antitrust claim. Id.
An analogous situation exists in the present case. The plaintiffs have not made any allegations regarding the relevant market that is affected by the defendants' alleged antitrust violations. The plaintiffs are attempting to support their antitrust claim based upon the defendants' alleged fraudulently acquired rights to their proprietary product. In accordance with CT Page 7409 the reasoning of B.V. Optische Industries De Oude Delft v.Hologic, the plaintiffs must provide a more substantial definition of the relevant market. Therefore, without any allegations regarding the relevant market, the plaintiffs have failed to state an antitrust claim for which relief may be granted. The defendants' motion to strike the fifth count is therefore granted.
Subject Matter Jurisdiction
The defendants also move to strike the entire complaint on the grounds that the court lacks subject matter jurisdiction. The defendants have previously raised the question of subject matter jurisdiction in their Motion to Dismiss, #106. The court,Fracasse, J., denied that motion and found that the court may render a decision regarding ownership of the `001 patent without deciding whether Veilleux and Dufault are actual inventors. (Memorandum of Decision Re: Defendants' Motion to Dismiss #106, p. 8.) "The law of the case . . . expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutory, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . ." (Citation omitted; internal quotation marks omitted.) Suffield Bank v. Berman, supra, 228 Conn. 774-75. The defendants have not raised any new or overriding circumstance regarding the court's jurisdiction. The court has subject matter jurisdiction over this case, and the defendants' motion to strike based upon the lack of subject matter jurisdiction is denied.
In summary, the defendants' motion to strike as to counts two and three is denied; their motion is granted as to counts one, four and five. The motion to strike as to the entire complaint based on an alleged lack of subject matter jurisdiction is also denied.
Jonathan E. Silbert, Judge